FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

**NOV 30 2018**

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

1   Kelly Innsbruck Alexander
    c/o 5130 S. Fort Apache #215-262
2   Las Vegas, NV 89148
    (626) 676-6333; kinnsbruck@yahoo.com
3

4

5

6

7

8            UNITED STATES I
                 THE DISTRI

9                                        **2:18-cv-02289-RFB-NJK**

10

11                                    Jury Trial:      YES   ☑ NO

12   Kelly Innsbruck Alexander         COMPLAINT FOR
           Plaintiff                   DECLARATORY AND
                                       PRELIMINARY AND
13   vs.                               PERMANENT INJUNCTIVE
                                       RELIEF
14
     Nevada Secretary of State              COMPLAINT FOR DAMAGES:
15   Barbara G. Cegavske, Lenora       A. CIVIL CONSPIRACY
     Mueller, Russell Ricciardelli,    B. CIVIL RIGHTS/
16   Edward D. Kania, and              CONSTITUTIONAL VIOLATIONS
                                       (1) Right to contract (Article I §10; 1st
17   DOES 1-50                              Amendment)
                                       (2) Denial of Due Process (5th Amendment)
18        Defendants                   (3) Illegal Seizure (4th Amendment)
                                       (4) Involuntary Servitude (13th Amendment)
19   STATE OF NEVADA,

20        Necessary party

21

22        I.   **OVERVIEW OF THE ACTION**

23        Comes now Plaintiff, Kelly Innsbruck Alexander, hereinafter Plaintiff, to seek

24   declaratory relief against the Nevada Secretary of State, Barbara G. Cegavske, hereinafter

25   Secretary of State or SoS, Lenora Mueller, hereinafter Mueller, Russell Ricciardelli,

- 1



## IV. CAUSES OF ACTION RIPE FOR DECLARATORY RELIEF

Plaintiff complains and for causes of action alleges as follows:

### A.  FIRST CAUSE OF ACTION

(For Declaratory Relief Regarding Purpose of Office of Notaries)

13. Plaintiff incorporates by reference paragraphs 1 through 12 as if fully set forth herein.

14. Plaintiff alleges that an actual controversy has arisen and now exists between Plaintiff and above-cited Defendants concerning their respective rights and duties in that Plaintiff contends: (A) Plaintiff has a right to serve as a notary on behalf of all people in the State of Nevada regardless of which chose in action the People elect;  (B) Plaintiff has the duty to treat parties who choose to settle commercial affairs in the private venue with the same respect, integrity, and conscientiousness as those who volunteer to operate in the public arena, (C) the mandate imbedded in the tenet behind the opinion in *OK Corp v. Williams 461 F. Supp. 540* requires all parties to a controversy to attempt private settlement prior to seeking judicial review which precludes the Secretary of the State of Nevada from (1) interfering with Plaintiff's patrons' requests, and (2) unilaterally penalizing Plaintiff for assisting parties invoking said tenet by assessing stiff monetary fines and stripping Plaintiff of the office of notary public, and, (D) Defendants dispute these contentions and contend that: (a) Plaintiff's performance can be controlled and chilled by the imposition of the rules and laws of the public venue (State of Nevada) even when requested to perform notarial functions for a party electing to settle commercial affairs in the private venue; (b)

Defendants have the authority to foray into the private venue and curtail/chill Plaintiff's right to perform services which support the People in the state choosing the private venue for the handling of their affairs, (c) Defendants were delegated rights and duties by the People, which permit state actors to compel Plaintiff to refuse services (in spite of the Notary Manual citing as the number one priority that notaries may not refuse services authorized by the legislature in the Notary's Manual) which Defendants determine as counterproductive or competitive with the State's ability to generate income; (d) Defendants' authority supersedes all rights and powers of the notary requested to perform duties for People who elect the private venue, including the power to unilaterally assess fines and penalties and withhold the granting of the office of notary (e) Defendants' powers extend to colluding to conspire to drive Plaintiff out of office by using an unsworn 'note' of inquiry against Plaintiff by denying Plaintiff a fair hearing or adhering to the administrative process identified in the Online Notary Training Program; (f) Defendants may foray into the private venue to (1) direct what is permissible in the private contracts consummated therein, and, (2) obstruct Plaintiff's performance of lawful duties prescribed by the Notary Handbook which delineate public functions, OR the Notary Manual prescribing private and/or common law functions where the long arm of the State doesn't have authority;(g) Defendants, through the use of threat, duress, and coercion, may exert public authority not delegated to Defendant state actors if the interest of the Defendant State is at stake, even if the purpose of the obstruction is to burn the bridge created naturally by the office of the notary so that private judgments do not and cannot diminish the State's

hereinafter RR, and Edward D. Kania, hereinafter 'attorney' or Kania, whose acts, actions and/or omissions suggest disparate stances regarding the performance of Plaintiff in the position of notary public.

Plaintiff not only considers the appointment a bridge between the public and private venues, but also adjudges the appointment as conferring the same rights, duties, obligations, benefits, and entitlements upon the recipient of said appointment as those to which other beneficiaries are entitled.  Defendants actions would have this Court believe that a notary is restricted to operating only within the public venue, and limited to performing only those acts which may or may not meet the approval of parties negatively impacted by the notary's business, entitling and/or 'authorizing' Defendants to strip Plaintiff of the appointment without hearing or opportunity to cure based on a mere letter of inquiry from parties who have or believe they have 'friends in high places,' a discriminatory premise to be sure.  That notwithstanding, Defendants exemplify an attitude of superiority over Plaintiff who was unilaterally stripped of the appointment AFTER Defendants negotiated a payment of fines against Plaintiff, and in the absence of probable cause which, had the laws been followed and/or the administrative process built into every state agency been adhered to, would have revealed the letter of inquiry from RR to SoS to be founded in retaliation and revenge against a patron whom Plaintiff served in an attempt to collect evidence of RR's intent for a different federal action pending in this same court.  While the evidence indirectly impacted Defendant RR as to RR's refusal to fire an employee later found by a U.S. Marshal to be on the Nevada Sex Registry, the underlying issue involved Defendant Kania's involvement with influencing a state court judge, a matter serious enough to prompt said 'attorney' to lash out for

revenge and to use the office of the Nevada Secretary of State to achieve that goal.  The

fact that SoS and Mueller by-passed the due process protocol stands as *prima facie*

evidence that a civil conspiracy had to promulgate the desired outcome.

When a state governmental agency acts as if there is no private venue, its actions and

those of its agents/state actors, in effect, compel performance in the public venue,

desecrating the very existence of the People who comprise the *raison d'etre* of that very

government.  Defendants SoS and Mueller acted under color of law outside their

delegated authority to deny Plaintiff the right to perform the duty of bridge between the

public and private in spite of the tenet in *OK Corp v. Williams, 461 F. Supp 540*, which,

by the very nature of the decision mandating all parties to attempt private settlement prior

to seeking judicial review, indicates the separate venues.  By proceeding as if there were

no private venue in which Plaintiff could assist in obtaining such private settlements,

Defendants, and all of them, establish a subservient station for Plaintiff against Plaintiff's

will.  The resultant oppression penalized Plaintiff for contracting in the private venue and

deprived Plaintiff of the opportunity to continue to serve in a chosen venue which is an

attack on the People of the state of Nevada, and the People of this republic as a whole.

The ensuing silence  from Sos and Mueller has continued since December of 2017 which

must be construed as Defendants holding firm to their position in spite of the refusal to

produce any legal basis when provided with an opportunity to cure.  This action serves to

determine the exact nature and basis for Defendant's unsubstantiated/untenable

viewpoint.

Plaintiff attended the required online class for the renewal of Plaintiff's appointment

on or about April 20, AD2018, and tendered a money order to cover the fees associated

with obtaining the notary stamp without which Plaintiff cannot proceed to perform the

duties of a notary.  Public records reflect the money order was negotiated in favor of the

payee, ergo, State of Nevada Secretary of State on or about July 17, AD2018 yet SoS has

withheld the issuance of the authorization for the renewal of Plaintiff's appointment and

notarial stamp, effectively chilling Plaintiff's ability to serve the People.  Hence,

preliminary and permanent injunctive relief is sought in the nature of a Writ of

Mandamus/Prohibition, ordering SoS to stop withholding the certificate authorizing the

acquisition of the stamp, in effect, ordering SoS to issue the authorization to Plaintiff.

Plaintiff also seeks relief enjoining SoS from maintaining an inaccurate record which

intimates Plaintiff committed some act worthy of suspension, revocation, and/or

cancellation of the appointment when no formal or official determination has been made

through the proper channels established within the agency.  This is an action at law and in

equity, and is designed to prohibit the State of Nevada's direct encroachment upon the

sovereignty of the People of the State and the United States of America assured under the

Ninth Amendment to the United States Constitution, not to mention defying the very

well-established holding [*OK Corp, ibid.*] of the U.S. District Fifth Circuit Court.

Therefore, the most precarious issue raised herein is the refusal/failure to recognize the

private venue and the freedoms of the People, upon which the entire government is based.

## II.  JURISDICTION

1. This matter is a declaratory judgment action pursuant to 28 U.S.C. §2201 and §2202
   which provides for a determination of the rights and duties of each party based upon
   an agreement through the compact permitting statehood, to appoint notaries to perform
   duties within the State and within the state, ergo, for the people and for the public.

[For purposes of this suit, 'public' is defined as "the entire body politic."]  Under 42 U.S.C. § 1983, Plaintiff sues state officials acting under color of law for the "deprivation of rights, privileges, or immunities secured by the Constitution under the First, Fourth, Fifth, and Thirteenth Articles in Amendment, as well as the clause preserving the right to contract without government interference, as prescribed at Article I § 10. Plaintiff is entitled to relief because the facts demonstrate that a genuine federal question is raised herein.

2. Plaintiff invokes 5 USC § 552(f)(5) to establish Defendants' duty to maintain an accurate record and to correct the inaccurate record upon request.

3. This matter is not an interlocutory appeal challenging an administrative decision for no proceeding was conducted, at least not one in public, under the data integrity board process, or of which Plaintiff was notified, in spite of the mandate for Defendant SoS to do so (this mandate was emphasized by the instruction presented at the online training class Plaintiff attended).  This action is a request for the third branch of the federal government to exercise its authority when a state cannot or will not respect the rights of the People in the private venue, and is authorized under the undeniable, fundamental principle of law wherein jurisdiction may be raised at any time in any forum.  Preliminary and permanent injunction is therefore authorized when a state with a vested interest holds firm to an unconstitutional denial of rights.  The Nevada Constitution does not bestow upon the State unlimited or expandable powers upon the agencies within the framework of a 'government of the people, by the people, and for the people."  It delegates limited powers and is designed to control the reach of the State even in its equal sovereignty with the People so the people will not be subjugated to the arbitrary, capricious, and unlawful exercise of illegal authority.  This is particularly significant when government agents pick up the banner of an adverse

1    party and conspires in the absence of due process, to injure the other party, ergo,

2    Plaintiff.

3    Absent this immediate judicial determination, Plaintiff and the People of the State of

4    Nevada, and the People of the United States of America will continue to suffer

5    irreparable harm through the deprivation of the right to obtain a judgment in the private

6    venue when adherence to the mandate 'all parties must attempt private administrative

7    remedy PRIOR to seeking judicial review' **is obstructed or annihilated**.  The continued

8    acts of Defendants will destroy the will and rights of the People via compelling the

9    People to utilize the statutory courts to obtain judgments, and the involuntary compliance

10   can have no other effect than to open the door to government intrusion as if the People

11   had no will or rights.   If the court in *OK Corp v Williams, 461 F. Supp 540*, did not

12   intend for the People to have a remedy in the private venue, there would not be signs

13   posted in small claims courts mandating the parties to 'talk it out in the hall' and judges

14   would **not hesitate to** grant courtrooms to anyone and everyone who thought they had a

15   case. Judges would not require the parties to 'step outside the courtroom' to discuss

16   settlement and mediation centers would be required to discuss the matter violating all

17   rights to privacy.  If there were no bridge between the public and private, government

18   agents would have free reign over all activities of all people and there would be no

19   freedom from tyranny.  If the court that opined "everyone must attempt private settlement

20   prior to seeking judicial review' did not recognize or acknowledge the existence of the

21   private venue, there would be no need for such an opinion.  And, if there were no bridge

22   to bring judgments from outside venues into the pubic for ratification or

23   acknowledgment, there would be no statutes authorizing courts to re-cognize foreign

24   judgments.  Preventing the People from obtaining private evidence **of deliberate**

25   **dishonors** and/or **res judicata** judgments without the use of state courts or attorneys

1  would usurp the power of the people as the governing authority and must be deemed as

2  foraying from the public venue into the private to 'invade' the rights of the people

3  guaranteed to be secure in their homes and commercial affairs, making the People

4  involuntary servants subject to government fancies, whims, and dictates.  The ruse of

5  withholding the re-authorization to obtain the notary stamp after accepting payment for

6  the appointment suggests the subtlety of the overall goal of suppression and oppression

7  implemented by Defendants, since honest public servants do not resort to deceit or

8  trickery to conform to the law.  Assumption of jurisdiction is an urgent matter if this

9  Court is to intervene to enjoin Defendants from destroying the sovereignty of the People

10  who are entitled to petition for redress in any venue, as delineated in the chose in action

11  doctrine honored by honest officials.  Plaintiff is entitled to relief because the facts

12  demonstrate that a genuine federal question is raised herein.

### III. PARTIES

4.  Plaintiff, Kelly Innsbruck Alexander, is and at all times herein mentioned, an

    inhabitant of the State of Nevada, and maintains a viable mailing address at 5130 S.

    Ft. Apache Rd., #215-262, Las Vegas, Nevada, 89148, who, until recently, served as a

    notary public from August 1st of 2010 until August 1st of 2018 when Defendants

    conspired to deprive Plaintiff of that office without notice.

5.  State of Nevada Secretary of State is an instrumentality of the State of Nevada, and

    may be sued independently since it is not encompassed as a "person", "partnership",

    or "corporation" as defined by the Federal Trade Commission (FTC) Act.  It is also

    not an "association" nor a 'for profit' or non-profit corporation; but for the State of

    Nevada, the office of SoS would not exist. Therefore, Plaintiff believes and alleges

that the office was created by statute and operates outside the constant scrutiny and/or supervision of other officials holding office within the state.  The address of the office is State Capital Building, 101 N. Carson Street, Suite 3, Carson City, NV 89701.   The STATE OF NEVADA is included as a necessary party who employs other Defendants.

6. Barbara G. Cegavske is the current elected Secretary of State and is sued herein in her private individual capacity, and is a resident of the State of Nevada, whose address is also State Capital Building, 101 N. Carson Street, Suite 3, Carson City, NV 89701. The STATE OF NEVADA is included as a necessary party to determine if STATE authorized or colluded with other Defendants who acted in official capacity.

7. Lenora Mueller is an administrator within the notary division of the Secretary of State's Office and is sued herein in her private individual capacity, and is authorized to assess, evaluate, and assign fault for violations of notary practices, including but not limited to suspension, revocations, and cancellations of the appointments of notaries. Mueller is a resident of the State of Nevada whose office address is State Capital Building, 101 N. Carson Street, Suite 3, Carson City, NV 89701.  The STATE OF NEVADA is included as the employer of Mueller.

8. Russell Ricciardelli is a resident of the State of Nevada and a business owner operating within Clark County, whose address is 9154 White Rock Peak Rd., Las Vegas, NV 89113-6142, and who, out of retaliation challenged the actions of Plaintiff in an act of retaliation for Plaintiff having sought to determine RR's intent regarding a private settlement in an issue raised by Plaintiff's patron regarding wrongful eviction for reporting sexual harassment and illegally influencing a state court 'judge'.

9. Edward D. Kania is a resident of the state of Nevada, a 'practicing' attorney under the Bar Card # 8821, whose address is 106 S. 6th Street, Las Vegas, NV, 89101, and who advised RR to file a second illegal action in an eviction action after an unfavorable decision was made in a previous case (known as 'decision-shopping' by the Supreme Court of Nevada in a case titled *Five Star Capital v Ruby)* in order to evict the patron for whom Plaintiff sought the private judgment [pending Nevada Supreme Court case # 75624.]

10. Plaintiff is ignorant of the true names and capacities of DOE DEFENDANTS who may be identified at a later time, such as during discovery which may reveal Defendant SoS and/or Mueller were influenced by other parties to 'help' an outside source (including but not limited to 'friends' of Defendants such as the judge unduly influenced in the afore-mentioned USDC action) and/or advised by other officials within the State of Nevada such as the Governor or Attorney General.

11. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and/or employee and/or associate of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment and/or association, for in the absence of some bond, state actors are unlikely to act unilaterally and contrary to the administrative procedures established within their state.

12. Plaintiff believes and herein alleges that Defendants acted in his or her personal capacity via direct acts and actions or omissions, or through actions involving sufficient causal connection between the act and the injury to Plaintiff.

coffers augmented by filing fees and court costs that are reduced by private

settlements.

## A1. DETERMINATION OF RIGHTS AND RESPONSIBILITIES

15. Plaintiff incorporates by reference paragraphs 1 through 14 as if fully set forth herein.

16. This Honorable Court is asked to determine the rights and responsibilities of (A)

Plaintiff who exercises, for all of the People whether in the public or private venue, the

duties of a notary public according to the law, the Constitution, and the parameters of

the State of Nevada Notary Handbook as well as the Notary's Manual, *Ninth Edition*,

but who has been surreptitiously stripped through stealth and deception of the valued

**and** necessary office by Defendants who, under color of law, forayed into the private

venue and desecrated the functions of the office wherein the People have a remedy

against miscreant public government officials who disdain restrictions upon their

power, and the limited authority delegated to the State of Nevada and (B) Defendants

who forayed outside their realm of authority into the private venue to control, restrict,

limit, interfere with and/or obstruct the functioning of the private venue to oppress and

intimidate the People whom Defendants, as state actors, swore to preserve and protect,

by denying due process to Plaintiff, colluding to conspire with a disgruntled individual

who dishonored an attempt at private settlement upon the advice of an attorney who

had notice that interfering in the private venue would result in allegations of treason.

Defendants stripped Plaintiff of the office of notary which prevents the People from

obtaining private evidence and judgments against state actors who abuse their power

under color of law.

## A2. FACTS

17. Plaintiff incorporates by reference paragraphs 1 through 16 as if fully set forth herein.

18. On or about June 10th, 2010, Plaintiff studied and applied for a notarial appointment for the office of notary in the State of Nevada.

19. Plaintiff dutifully served the People of the State of Nevada in both their public and private capacities until September 25, 2010 when Plaintiff, serving as a notary public was requested to collect evidence from then Secretary of State, Ross Miller as to his intent regarding private resolution over a private automobile offered as an asset for the State of Nevada in lieu of registration of said automobile. Plaintiff sought clarification regarding the purpose of notaries and the scope of the powers of the State to curtail duties legislatively authorized.

20. Hearing no objections from Ross Miller regarding Plaintiffs efforts to document and memorialize Ross Miller's response, Plaintiff then resumed  providing personal knowledge of dishonors through the private protest process, doing nothing more than issuing Certificates of Protest to patrons after the intent of an opposing party became clear. Said certificates enabled Plaintiff to testify, if called upon, that the party dishonoring the opportunity to cure or settle the issue willingly and knowingly, did so intentionally, having refused three times to provide lawful and honorable response. Plaintiff's testimony would prevent any party from abusing or unnecessarily draining the courts resources which are made available to parties where a genuine controversy exists.  Plaintiff's personal knowledge that an opposing party deliberately refused to negotiate and attempt private settlement, as mandated by law, is designed to create estoppels against parties whose intent is to use the threat and intimidation of a public

court action against an honorable party capable of stating a claim upon which relief could be granted.

21. On or about November 16, AD2017, Plaintiff received a letter from the Secretary of State of Nevada that found that Plaintiff was in violation of NRS 240.075 Prohibited acts. #2, #3, #10, and #11 with unspecified allegations and basing said allegations on RR's submission of Plaintiff's private communication delivered to RR at the request of Plaintiff's patron seeking private settlement, titled "NOTICE OF PROTEST AND OPPORTUNITY TO CURE" and should remit $5200 in fines.  Said letter was signed by Lenora Mueller, Notary Administrator of the Notary Division, under the seal of the SoS, Barbara G. Cegavske.

22. On or about November 30, AD2017, Plaintiff sent Lenora Mueller a Conditional Acceptance, agreeing to accept the charges fully upon certain conditions labeled 'proofs of claim' being met.

23. In late June or early July of AD2018, Sean Haggarty, a notary public (not a party) issued a Notice of Dishonor and Opportunity To Cure to Lenora Mueller for having failed or refused to provide a response to Plaintiff's Conditional Acceptance that sought the basis for the unilateral fines and the lawful or legal basis for the denial of due process.

24. On or about December 19, AD2017, Plaintiff, who had no commercial energy to proceed in the private settlement until issuance of a final Certificate of Dishonor/Protest was issued, changed the issue to one of a FOIA request under Nevada's Public Records Act, seeking copies of the documentation which formed the basis for the penalties unilaterally assessed as well as the authority granting the right

to a unilateral decision which determined that Plaintiff was not in compliance with NRS 240 law or statute or that Plaintiff was prohibited from contracting in the private venue.

25. On or about January 16, AD2018, SoS records division, in reply to Plaintiff's FOIA request, mailed Plaintiff a copy of the letter of inquiry claimed to have been sent by Russell Ricciardelli (RR), asking for an investigation of Plaintiff.  The innocuous contents were unsworn and simply read, "Please look into this complaint…based on my belief that these documents are beyond the scope of a notary…"

26. Plaintiff filed a claim against SoS in order to exhaust all remedies, sending a coy to Attorney General, Adam Laxalt, seeking damages for the denial of due process exemplified by SoS's inexplicable circumvention of the State's administrative process which required a fair and impartial hearing after an independent investigator collected all available confidential commercial information to set before an administrative law judge PRIOR to a determination that Plaintiff had violated any legal or lawful duty.

27. On or about July 20th, AD2018, Plaintiff received notification from the notary who was requested to obtained personal knowledge that Mueller deliberately and willfully ignored Plaintiff's attempt at private settlement, that Mueller had in fact elected dishonor  of Sean S Haggerty's initial NOTICE OF DISHONOR once again, rendering Plaintiff's claim as ripe for a declaratory judgment action.

## A3. PLAINTIFF MOVES THE COURT:

For a declaration that: Plaintiff incorporates by reference paragraphs 1 through 27 as if fully set forth herein.

28. The People of the United States of America and The State of Nevada via the 1864 accord granting Nevada permission into the Union on October 31, 1864, are entitled by natural right to obtain judgments in the private venue.

29. The People of the United States of America and The State of Nevada via the 1864 accord granting Nevada permission into the Union on October 31, 1864, are entitled by natural right to obtain judgments in the private venue without subscribing to public venue offers of courts and/or attorneys.

30. The People of the United States of America and The State of Nevada via the 1864 accord granting Nevada permission into the Union on October 31, 1864, are entitled by natural right to obtain judgments in the private venue as substantiated in the court ruling *OK Corp v Williams 461 F. Supp 540*, which mandates all parties attempt private administrative process PRIOR to seeking judicial review.

31. The hierarchy of the law delineates the separation of the private venue from the public venue, wherein the foundation of said hierarchy secures the most power and authority and diminishes as the levels advance from 'natural law' to 'commercial law' to 'common law' to 'statutory law' until it secures the least power and authority at the furthest level from the foundation referred to as 'political law.'

32. The private venue, recognized as closer to the foundation of all law (natural law which cannot be altered by man), is more powerful than public venue law, formed subsequently upon the foundation of private law.

33. The two venues are available to all People (defined as the government capable of delegating to public servants the execution of the People's will) by choice.

34. No authority has ever been granted to any citizen (even ones delegated as public servants) which authorizes compelling another living soul into either venue. The first

Thirteenth Article in Amendment prohibited titles of nobility (including but not limited to Esquires) from operating in the private venue of the People.

35. The first Thirteenth Article in Amendment was **enhanced** in 1939, through the Peonage Act, when Congress authorized titles of nobility to operate in the limited capacity where corporate, ergo, dead fictional entities (incapable of speaking for themselves) might state or defend a claim.

36. The divide between the private venue labeled Commercial Law, and the public venue, labeled Statutory Law, can only be traversed by voluntary and explicit decisive action.

37. The private venue has no need of 'tools' or 'weapons' with which to compel a party into the private venue since all People are endowed with natural rights.

38. The Nevada Secretary of State's Office (public venue) unlawfully uses trickery, deceit, force, coercion, and threats which can be employed to compel People in the private venue into the public venue against their will.

39. In the instant case, Mueller, **appears to have been** acting on behalf of the Secretary of State of the State of Nevada, yet in an *ultra vires* action which requires matters of controversy to proceed through an administrative law judge, refused to respond to an attempt to settle this matter in the private venue, outside SoS's public title and authority, by remaining silent to the Conditional Acceptance, as documented by the Notice of Dishonor and Opportunity To Cure issued by a notary public on or about July 15, AD2018, memorializing the silence of Mueller.

40. The chilling effect of the curtailing of Plaintiff's appointment to serve as a bridge between the public and private venues substantiates that a public agent conspired with an independent party to achieve the same goal, which comports with the definition of conspiracy.

41. The People calling on Plaintiff to serve as a bridge between the public and the private venues are patrons, defined as "one who supports or protects; an advocate or pleader."

42. Plaintiff's patrons are not customers, which are defined as "a buyer, purchaser, or receiver of goods or services; a person who receives help or advice from a professional" which does not comport with asking the notary to initiate a protest process by first obtaining the all-important personal knowledge of the facts which the notary is requested to take into the public venue.

43. A notary who obtains personal knowledge of a dishonor of a private instrument and/or counter-offer in the private venue carries the weight of two witnesses due to the special office granted through the notary appointment, making such testimony of the notary irrefutable.

44. A notary who is requested by one of the People to obtain personal knowledge of a dishonor of an instrument or offer in the private venue is not seeking advice or receiving help with the commercial affairs of said party (one of the People), rendering the party a patron, not a 'customer' over whom a public official such as Mueller or the SoS, may exert authority.

45. Rendering the testimony of a party's dishonor 'irrefutable' by a notary constitutes a 'judgment' since it cannot be controverted, in the absence of defects.

46. Nevada's Secretary of State deplores private judgments because (A) the state courts are deprived of filing fees and numerous litigation costs, and, (B) state officials lose their secret weapon of 'ignorance' routinely used by government agents who do not want transparency of the remedy notaries provide to the People when agents/officials dishonor People seeking remedy via memorialization of their silence or argument.

47. If Defendants successfully bar the private judgment obtained by Plaintiff's patrons, which permit the People to avoid attorneys and courts by controlling the acts in the

private venue through curtailing the right of Plaintiff to issue private judgments, the State of Nevada will avoid accountability for millions of dollars in tort and civil rights awards by defrauding the People of legitimate claims because notaries were/are being prevented from collecting and bringing evidence against errant state actors into the public arena under the rules governing foreign judgments.

48. The deprivation and/or desecration of the right of the People to obtain judgments in the private venue constitutes 'mixed war' which is defined as government agents fighting and destroying the People and the common law upon which statutory law is predicated.

49. 'Mixed war' is a treasonous act because, by destroying the rights of the People to effectuate remedies against rogue public servants, those engaged in 'mixed war' benefit via oppression of the very assets said servants are delegated to protect and serve, resulting in tyranny.

50. Nevada's Secretary of State's obstruction and interference with Plaintiff's duty to obtain personal knowledge of a dishonor destroys or attempts to destroy the contract between the People and those delegated to serve, ergo, the Constitution of the United States and the Constitution of the State of Nevada.

51. The failure of the State of Nevada, during its state-authorized training of notaries, to identify and instruct notaries in all of the duties notaries are authorized to perform must be construed as a self-serving, deliberate attempt to discriminate between the public and private duties by providing training for notaries choosing to operate solely in the public venue, in order to subvert the Constitution of the United States and the Constitution of the State of Nevada, is also a treasonous act.

52. At the very first live 'training' that Plaintiff attended in July 2010, required for obtaining the appointment of the office of notary, course instructors, believed to be

appointed and/or selected by the State of Nevada, were adamant that all class
attendees, including Plaintiff "cannot do that", when Plaintiff asked the question,
"What is the proper way to protest a non-negotiable instrument" reflecting a
determined plot to subvert and undermine the power of the People.

53. The State of Nevada prohibits protesting a negotiable instrument unless the notary
works for a bank, restricting the power of the State to public, commercial activity.
[Reference NRS 240.075(10)]

54. Nevada's Secretary of State expanded its authority by assuming power in the private
venue over non-negotiable instruments as well as negotiable documents which cannot
be encompassed by the public prohibition, meaning the public prohibition cannot
encompass instruments of any type in the private.

55. The State of Nevada has no express or implied exclusivity over the use of the word
'protest.'

56. Protesting the dishonor of a party's position comports with the definition of 'protest'
as "A protest (also called a remonstrance, remonstration or demonstration) is an
expression of bearing witness on behalf of an **express** cause by words or actions with
regard to particular events, policies or situations."

57. The comment made by the former director of the National Association of Notaries
regarding this question from a notary: "Where can I learn how to do protests?", ergo,
"You can't do that (protest a dishonor)" reiterated three times, also demonstrates the
plot to disarm notaries in the private venue to obstruct them from obtaining private
judgments for the unjust enrichment of state governments and to the detriment of the
People.

58. The adamant stance of the above-mentioned director the National Association of
Notaries, was only alleviated when the notary posing the question added "The party I

want to do the protest for is NOT a U.S. citizen", reflecting a well-orchestrated plot to conceal remedies available to the People should state actors violate the People's rights.

59. Government actors from any and all States of the Union, including Defendants, who suppress the private functions of a notary in any way, i.e., by either obstructing the obtaining of a private judgment or refusing to acknowledge and accept the judgment as a foreign judgment into a public civil action, must be deemed as committing 'mixed war' against the People.

60. The appointment of a notary office is not a license because the legal definition of 'license' is "permission to do that which is otherwise illegal."

61. Any and all States of the Union, whose state actors obstruct the private duty of a notary, including Defendants', to obtain personal knowledge of a dishonor, regardless of whether or not that obstruction involves a state actor, must face charges of tampering with a witness, coercing false testimony, and/or concealing inculpatory and/or exculpatory evidence.

62. Any and all States of the Union, whose state actors obstruct a notary from obtaining personal knowledge and/or producing testimony in a public venue, including Defendants,  must be charged with obstruction of justice and/or concealing relevant evidence in order to achieve a pre-determined outcome in a public court.

63. Any and all States of the Union, including Defendants, whose state actors obstruct a notary from obtaining personal knowledge and/or producing testimony in a public venue, must be charged with obstruction of justice and/or concealing relevant evidence in order to achieve a pre-determined outcome in a public court for the purpose of unjust enrichment.

64. Any and all States of the Union, including Defendants, whose state actors obstruct a notary from obtaining personal knowledge and/or producing testimony in a public

1   venue must be charged with obstruction of justice and/or concealing relevant evidence

2   in order to achieve a pre-determined outcome in a public court, compelling

3   participation in the public venue against the party's will in violation of the Thirteenth

4   Article in Amendment.

5   65. Any and all States of the Union, including Defendants, whose state actors refuse to

6   recognize and/or acknowledge a private settlement, regardless of whether or not any of

7   the parties are state actors, must be charged with discrimination against the People in

8   their protected, and understood as, 'private' class.

9   66. There is no prohibition against a Notary issuing a Notice of Dishonor to a party who

10   refused or failed to attempt private settlement before seeking judicial review, in the

11   private venue (not that the public actors necessarily could, would, or should know

12   what is lawful in the private venue).

13   67.  State agents, including clerks of the court, deputy clerks, and judicial officers, who

14   permit court actions to be filed when evidence of a willing and knowing dishonor

15   exists, must be deemed as seeking unjust enrichment.

16   68. State agents who permit court actions to be filed when evidence of a willing and

17   knowing dishonor exists, must be deemed as usurping the power of the People.

18   69. State agents who permit court actions to be filed when evidence of a willing and

19   knowing dishonor exists, must  be deemed as foraying into the private venue to

20   compel a party into the public venue against his will, which is a treasonous act.

21   70. There is no prohibition in the private venue against a Notary issuing a Notice of

22   Protest to a party who rejected the Notary's Notice of Dishonor and Opportunity to

23   Cure, prior to seeking judicial review.

24   71. There is no prohibition in the private venue against a Notary issuing a Certificate of

25   Protest to a party who requested a Notary's personal knowledge of  a dishonor by said

Notary delivering a Notice of Dishonor and Opportunity to Cure,  followed by a Notice of Protest and Opportunity To Cure, prior to seeking judicial review.

72. The definition of 'Certificate' as applied to the 'Certificate of Protest' means 'evidence of title' reflecting that the Notary and only the Notary has title to the dishonor, via a rigorous memorialization process and several opportunities to cure (to demonstrate willful and calculated intent to dishonor), ergo, the right to testify based on the Notary's personal knowledge of the dishonor of the party rejecting the opportunity to settle the conflict in the private venue.

73. The definition of 'Certificate' as applied to the 'Certificate of Protest' means 'evidence of title' reflecting that the Notary and only the Notary has title to the dishonor, via a rigorous memorialization process and several opportunities to cure (to demonstrate willful and calculated intent to dishonor), ergo, the right to testify based on the Notary's personal knowledge of the dishonor of the party rejecting the opportunity to settle the conflict in the private venue, which personal knowledge is the only acceptable evidence under the 'best evidence' rule.

74. Parties who receive a notarial-issued Notice of Protest and fail or refuse to cure their dishonor, are stopped from stating a claim in a public proceeding, effectively precluding the use of courts to instill intimidation, fear, or perversion of the truth or the ability of the trier(s) of fact to evaluate and judge intent.

75. Just because the State of Nevada and other States of the Union specifically authorize protesting notes, bills, bonds or Bills of Exchange (BoE) does not preclude the protest process for other purposes.

76. Just because the State of Nevada and other States of the Union specifically authorize protesting notes, bills, bonds or Bills of Exchange (BoE) does not preclude the protest

1    process for other purposes, most notably in the private venue where private contracts

2    preclude the interference of state actors.

3    77. The State of Nevada lacks any authority to foray into the private venue of the People

4    of Nevada to impose public law and/or public interpretations of legislatively-enacted

5    codes, statutes, ordinances, or policies onto the People of Nevada, or into the private

6    venue.

7    78. There is no lawful, written prohibition in the public venue against a Notary issuing a

8    Notice of Protest and Opportunity To Cure to a party in the private venue who rejected

9    the Notary's Notice of Dishonor and Opportunity To Cure, prior to seeking judicial

10   review [and the pattern and practice of Nevada's instructors who vehemently warn

11   students to never do protests is under color of law. Reference O*K Corp v. Williams*

12   *461 F. Supp 540*]

13   79. There is no lawful, written prohibition against a Notary issuing a Notice of Protest and

14   Opportunity To Cure to a party who rejected the Notary's Notice of Dishonor and

15   Opportunity to Cure in order to secure personal knowledge that any attempt to utilize

16   public courtrooms to override or otherwise negate the private judgment is a fraud upon

17   the court [and the pattern and practice of instructors of notaries to adamantly admonish

18   notaries from engaging in the  protest process is a violation done under color of law].

19   80. There is no lawful, written prohibition against a Notary issuing a Notice of Protest and

20   Opportunity To Cure to a party who rejected the Notary's Notice of Dishonor and

21   Opportunity to Cure in order to secure personal knowledge that any attempt to utilize

22   public courtrooms to override or otherwise negate that private judgment is a deliberate

23   abuse of the court.

24   81. Parties, including attorneys such as Defendant Edward D. Kania, who colluded to

25   quash the binding evidence of a notary against Kania's client, must be charged with

foraying into the private venue for the purpose of destroying the private rights of the People, such as the patron Plaintiff served at the time who sought a response from Kania's client.

82. Attorneys such as Defendant Edward D. Kania, who advise clients such as Russell Ricciardelli, in a matter set for private settlement prior to seeking judicial review, have committed treason by invading the sanctity of the private venue where titles of nobility are excluded by the Thirteenth Article in Amendment.

83. Attorneys such as Defendant Edward D. Kania, who advise clients such as Russell Ricciardelli, in a matter set for private settlement prior to seeking judicial review, have committed a conspiracy to invade the venue belonging to the People for the purpose of compelling Plaintiff's patron into the public venue against her will, which is a violation of the Constitution prohibiting involuntary servitude.

84. Attorneys such as Defendant Edward. D. Kania, who pervert a notary's evidence of dishonor by insisting that the Nevada Secretary of State penalize said notary, must be disbarred for willingly and knowingly committing barratry which is defined as 'exciting a cause of action where there is none.'

85. The Secretary of the State of Nevada and its administrators, such as Mueller, makes law when they obstruct Plaintiff's right and duty to issue private protests intended to memorialize dishonors of a private settlement attempt.

86. The Notice of Dishonor delivered to Mueller, an administrator for the Secretary of State of Nevada for her dishonor of Plaintiff's Conditional Acceptance since December of 2017, reflects the SoS's conflict of interest in the denial of the appointment of the office of notary to Plaintiff.

87. Secretary of State of Nevada maintains an inaccurate record damaging to Plaintiff through the withholding of the authorization to acquire a new stamp thereby denying

said appointment without a process suspending, revoking, and/or cancelling Plaintiff's appointment.

88. Secretary of State of Nevada maintains an inaccurate record damaging to Plaintiff through the withholding of the authorization to acquire a new stamp exemplifying said appointment without a process suspending, revoking, and/or cancelling Plaintiff's appointment, but solely on the word of a private citizen inquiring into the process.

89. Secretary of State of Nevada maintains an inaccurate record, apparently unofficial, damaging to Plaintiff through the withholding of the stamp denying said appointment without a process suspending, revoking, and/or cancelling Plaintiff's appointment, but solely on the word of a private citizen inquiring into the process who may be personally known to said Secretary, i.e., as a 'favor' to a 'friend'.

## A4.  DETRIMENTS AND DAMAGES

90. Plaintiff incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

91. Plaintiff is now subject to being prevented from performing the lawfully prescribed duties of a notary who is intended to serve as a bridge between the private and public venues in order to obtain private judgments.

92. Plaintiff  has and is continuing to suffer the chilling effect of being illegally stripped of her office as a notary entrusted with protecting the private venue for those patrons who choose to abide by the mandate that requires parties in conflict to attempt private settlement prior to seeking judicial review.

93. Plaintiff has and is continuing to suffer the chilling effect of being illegally stripped of her office as a notary entrusted with protecting the private venue for those patrons who

1  choose to memorialize dishonors of rogue state actors who use power, concealment of

2  knowledge, and intimidation through the courts to oppress their adversaries.

3  94. The People, the creditors, the assets, the *raison d'etre* of all lawfully instituted

4  governments, delegate certain authority to state actors which, when usurped and

5  perverted by miscreants such as Defendants, are subjected to tyranny and oppression

6  when even one remedy, such as provided by Plaintiff in her office as notary bridging

7  the gap between the public and private venues, which undermines and destroys the

8  People and the rights of the People, constitutes treason.

9  95. Plaintiff has been damaged by the unsworn 'complaint' (conveniently based on belief

10  only) made to Defendant Secretary of State Barbara G. Cegavske by Defendant

11  Russell Ricciardelli on the advice of his State Bar approved attorney, Defendant

12  Edward D. Kania, through the illegal and unlawful stripping of Plaintiff's office to

13  serve the People as a servant and bridge designed to maintain peace between the

14  People and their delegated public servants, having the inability to serve numerous

15  patrons whose abuse at the hands of government agents languishes because Plaintiff

16  cannot memorialize those dishonors.

17  96. It is detrimental to the legal system of the United States when personal favors to

18  'friends' by officials in 'high places' controls who is penalized and deprived of

19  appointments, as was Plaintiff upon the unsworn 'word' of a party who benefits from

20  the deprivation through the inability to be held accountable.

21  97. Plaintiff watches helplessly as people who choose to settle conflicts and/or handle

22  private affairs without the interference of government, have no remedy because of the

23  illegal curtailing of Plaintiff's office at the hands of instigators such as Defendant

24  Ricciardelli and Defendant Kania, cajoling, influencing, and/or otherwise colluding

25  with Defendant Secretary of State Barbara G. Cegavske, who willingly and knowingly

1    unilaterally fined, penalized, and stripped Plaintiff of the office which enables Plaintiff

2    to provide the one remedy available to People who choose to avoid the public venue

3    with its attorneys and courts.

4    98. The damages to the People of the State of Nevada, include but are not limited to:  (a)

5    rogue government agents such as SoS Cegavske and  Mueller violating their own rules

6    and regulations regarding conducting a hearing PRIOR to assessing fines, which lies

7    as *prima facie* evidence that Defendants denied due process in the face of the strict

8    mandates to give fair hearings and not take the word of an unsworn inquiry asking if

9    Plaintiff's behavior was an anomaly or if the State Defendants had any knowledge that

10   Plaintiff was not performing properly in the private venue.  This denial of due process

11   portends a foreboding trend for the People of the State of Nevada should Defendants

12   not be held accountable, for once guilt is not only presumed, but punishment allocated

13   immediately contrary to the restrictions on the state actors, oppression becomes

14   tyranny.

15   99. Plaintiff is entitled to compensatory and special damages as they relate to mental

16   distress. Plaintiff felt disenfranchised and 'attacked' by Plaintiff's own government

17   whose oppression reached into the private venue, with attempted  use of threat, duress,

18   coercion, and oppression to compel Plaintiff to perform for the public venue

19   exclusively, then sought to lure Plaintiff into the public venue by charging Plaintiff

20   with secret allegations and unilaterally finding Plaintiff 'guilty/liable' for $5200 in

21   fines and penalties without a hearing, ensuring that Plaintiff would have to address the

22   public penalties in a public forum and appear to have waived the protections of the

23   private venue.

24   100.    Defendants' foray into the private venue destroyed the sanctity of the private

25   venue where the People are to be protected as the *raison d'etre*, ergo, the assets, the

1    grantors of the private trust, which destruction of the freedom caused Plaintiff much

2    emotional distress and grief that Plaintiff's own country would violate the People and

3    Plaintiff in particular, who sacrificed to provide remedies outside the State courts for

4    those who sought private settlement prior to seeking judicial review.  Defendants

5    benefitted by refusing to renew Plaintiff's notarial office appointment in that People

6    deprived of Plaintiff's services in assisting private settlements had no other choice but

7    to pay Defendants' employer for court services.  Plaintiff was no longer 'free' but was

8    deprived of the freedom to serve the People when Plaintiff did not succumb to the

9    desires of Defendants, demanding certain performance under involuntary servitude or

10   else suffer the consequences of living in virtual exile.  These elements satisfy the

11   presumed general damages and the aggravated objective and subjective bad faith

12   allowances to make Plaintiff whole.

13  101.   Plaintiff gave serious thought to quitting servicing the needs of the People,

14   surrendering to the tyranny and living as a recluse rather than agreeing to the

15   restrictions Plaintiff's 'master state' imposes, i.e., to serve only the public.  Plaintiff

16   lived in anguish over the fact that the very government which Plaintiff believed had

17   the desire of curtailing rogue state actors, would chill Plaintiff's efforts to bring those

18   rogues to justice through private settlement attempts to flush out the miscreants.

19   Plaintiff who glories in the opportunity to assist the People who are subjected to

20   oppression, was herself subjugated through suppression by Defendants who knew or

21   should have known their actions were malicious and the denial of due process is, in

22   and of itself, when predicated upon nothing more than an unsworn piece of paper from

23   a disgruntled third party, aggravated objective and subjective bad faith.

24  102.   Plaintiff is entitled to declaratory relief because Defendants cannot trample the

25   private venue as if the People do not have and/or are not entitled to the safe-haven of a

venue outside the 'state.'  When the People are absorbed into the 'state', there are no

natural freedoms and the People and the State merge into one with no clear delineation

between them which destroys freedoms, rights, liberties, and the line of demarcation

between the public and the private trusts.  Special damages are appropriate when

Defendants know their over-reaching actions subject Plaintiff to gross confusion and

fear over waking up one morning and finding an un-noticed demand for $5200 facing

her.  In addition, general damages which may be either pecuniary or non-pecuniary,

must be applied whether proven or presumed when the injury extends beyond Plaintiff

to the entire populace of the United States.

103.    Special damages for common law remedies are provided for under 42 USC 1988,

and common law is operative in the private venue where Plaintiff performed the acts

Defendants unilaterally deemed 'illegal'.

104.    Special damages for common law remedies are provided for under 42 USC 1988,

and Defendants' foray into the private venue, albeit surreptitious and conniving, is a

blatant breach of the common law which is, in the hierarchy of the law, separate and

distinct from the venue where Defendants garner their authority.

105.    Defendants had actual knowledge that Defendants were committing

Constitutional violations via Plaintiff's Conditional Acceptance, namely their seizure

of Plaintiff's property interest.  Their subsequent dishonor of the Opportunity to Cure

is *prima facie* evidence the act was malicious and both objective and subjective bad

faith acted out under color of law in an aggressive act of oppression which mandates

exemplary damages.

106.    Defendants' foray into the private venue reflects a constant pattern and practice of

willful and gross disregard of Plaintiff's rights and the rights of the People living

peacefully in the private venue where they are immune from compelled appearance in

the public venue, mandating severe exemplary damages, particularly since the letter of inquiry from RR via his attorney Kania did not and could not invite or authorize the trespass into the private venue.

107.    Defendants knew or could have discovered that the U.S. and Nevada Constitutions bind state actors to specific boundaries and that crossing them in either direction is an act of aggression prohibited without reservation.  Defendants' trick to compel performance in the public only by withholding Plaintiff's office and imposing penalties and fines without a hearing, was foiled by Plaintiff's Conditional Acceptance using the private administrative process and emphasizes the *ultra vires* actions of Defendants who committed these Constitutional violations under color of law, ensuring their liability in their private and individual capacities.  The Constitutional prohibitions bind Defendants and must be subject to heavy exemplary damages due to the nature of the aggravated acts which infringed on the freedoms and liberties of all People entitled to seek private settlement prior to seeking judicial review.

108.    Protecting intangible interests such as the freedom to obtain private judgments outside the statutory state courts is as significant as any other right which restricts the aggression of state actors against the people, for depriving the People of any remedy against corrupt officials constitutes tyranny.

109.    Recovery of exemplary damages is predicated upon: (1) a showing of compensatory damages; (2) necessity for vindication of Plaintiff; (3) need to deter further such actions, not only against these Defendants, but against all states who penalize notaries for assisting the People obtain justice; and, (4) preserving the law enforcement rights of the People to serve as private attorneys general.

## A5.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

110.    Plaintiff incorporates by reference paragraphs 1 through 109 as if fully set forth herein.

111.    Plaintiff herein alleges the exhaustion of administrative remedies as follows: Plaintiff first complied with the tenet in *OK Corp v. Williams, 461 F. Supp 540*, which mandates that all entities must attempt private settlement prior to seeking judicial review on or about November 30, AD2017.   Plaintiff tendered a conditional acceptance of Defendant Secretary of State and Lenora Mueller's offer that Plaintiff passively allow the surreptitious stripping of Plaintiff's office without any official suspension, revocation, and/or cancellation, and to quietly consent to pay $5200 in fines and, in effect, cease and desist performing unidentified, prohibited acts, all unilaterally imposed on the basis of an innocuous inquiry which SoS converted into a complaint and a FINDING OF GUILT without contacting Plaintiff even once for possible opposing *confidential commercial information* (cci), which, ironically, is the stalwart of the data integrity board cycle instituted at every branch of government in the State of Nevada, not to mention the federal agencies.

112.    Plaintiff also sent to the SoS, two sets of FOIA requests under Nevada's Public Records Act, the first on December 19, AD 2017, and the second on October 22, AD2018, the latter of which has not been responded to.

113.    Additionally, Plaintiff's notary did not receive a response to the Notice of Dishonor and Opportunity To Cure that Plaintiff's notary delivered to Mueller in July, AD2018, indicating the SoS via Mueller remained silent to the Conditional Acceptance which, to date, indicated a deliberate choice to remain silent to the settlement of the crucial issues raised herein.

1   114.   As a last resort, whether such a move was required or not, Plaintiff filed a claim

2          for damages with the SoS on or about October 11, AD2018, to ensure that all remedies

3          had been exhausted.  There has been no response from SoS or the State's Attorney

4          General, Adam Laxalt to whom the claim was delivered.

5   115.   Therefore, Plaintiff seeks a declaratory judgment that Plaintiff is entitled to relief

6          which prevents the destruction of the private venue through a State's office/officer

7          who forays into the private venue to impose public rules which not only diabolically

8          oppose the intent of the tenet mandating attempts at private settlement, but which

9          portend to authorities not delegated, that usurp the power of the People in determining

10         the means and manner in which private settlements are obtained so that the State

11         enriches it coffers at the expense of the State's creators.

12                          **B.  SECOND CAUSE OF ACTION**

13

14         (For Declaratory Relief Regarding Enforcement of Unofficial And Unilateral
           Acts of State Officers in Violation of the U.S. Constitution)

15  116.   Plaintiff incorporates by reference paragraphs 1 through 115 as if fully set forth

16         herein.

17  117.   Plaintiff alleges that an actual controversy has arisen and now exists between

18         Plaintiff and above-cited Defendants concerning their respective rights and duties in

19         that (I) Plaintiff contends: (A) that even though Plaintiff accepted a  notarial

20         appointment from the State of Nevada's Secretary of State Office to perform in either

21         the public or private venue, Plaintiff still retains all rights of a natural, private citizen

22         and surrendered nothing secured by either the State of Nevada or the United States'

23         Constitutions, including (1) the due process mandates or the capacity to contract at

24         will without government interference, coercion, or threats, (2) the State of Nevada

25         lacks authority to dictate how Plaintiff implements the status of notary when

1  interacting with beneficiaries to the public trust as private assets living free outside

2  government purview, entitling Plaintiff to exercise the notarial office to comport with

3  tenets and opinions as they relate to performing all duties cited in the Nevada Notary's

4  Handbook, without obstruction from the Secretary of State and/or the State of Nevada,

5  by creating the necessary bridge between the public and private venues when the

6  People elect to seek private settlement judgments capable of recognition in the public

7  venue; (3) Plaintiff acts in accordance with the tenet expressed in *OK Corp v Williams,*

8  *461 F. Supp 540* since Defendant SoS has refused to provide alternatives for the

9  People to achieve private settlements in other manners which must be construed as (a)

10  coercion to contract with State courts and (b) suppression of a remedy acknowledged

11  in the *OK Corp* opinion; (4) Plaintiff, within and/or without the authority inherent in

12  the 'office' of 'notary' is entitled to due process even if, and especially when,

13  Defendants apply political extortion (do it our way or else) to actions Defendants

14  desire to ignore or interpret differently from the interpretation applied in the private

15  venue;  (5) Plaintiff's expectation to trust that no government agency will collude with

16  another citizen unable to, incapable of, and/or unwilling to state a claim, is not

17  unreasonable because such collusion results in a conspiracy which oppresses and chills

18  Plaintiff's duty to assist one of the People seeking to settle commercial affairs in the

19  private because the private citizen's interpretation of the issue contravenes Defendant

20  SoS's unjust enrichment ploys,  while (II) Defendants' acts, actions and/or omissions

21  contend: (A) Defendants gained an implied exemption to the prohibition against

22  interfering with private contract because Defendants (1) granted Plaintiff the office of

23  notary and now is in the debt of the State, (2) received the commercial energy of a

24  private citizen requesting an inquiry, (3) have been delegated special authority to foray

25  into the private venue to direct commercial activity which might end up in the public

1   venue asking a judge to convert a private settlement into a public judgment capable of

2   enforcement, particularly against errant state actors; (B) the chilling of Plaintiff's

3   capacity to assist the People in obtaining private settlement judgments in the private

4   venue is fair competition practices advancing the compelled use of State courts; (C)

5   Plaintiff is not entitled to the **mandated** administrative process wherein an

6   independent investigator collects confidential commercial information from all parties

7   to an issue and provides an administrative law judge to review and determine the

8   outcome because Plaintiff is operating in the private venue where such administrative

9   privileges established by the State for each agency does not extend;  (D)

10  circumvention of the mandated Data Integrity Board process exonerates SoS from the

11  ramifications of denial of a hearing, imposition of unilateral fines and the penalties of

12  stripping of the office of notary without probable cause, and, (E) Plaintiff's activities

13  of assisting private settlements infringe upon the State's monopoly of offering court-

14  adjudicated settlements which are touted as fair and impartial while the private

15  administrative process has no such 'guarantees'.

16

## B1. DETERMINATION OF RIGHTS AND RESPONSIBILITIES

18

19  118.    Plaintiff incorporates by reference paragraphs 1 through 117 as if fully set forth

20      herein.

21  119.    This Honorable Court is asked to determine the rights and responsibilities of  (A)

22      Defendants as they pertain to adhering to the principles of due process and

23      administrative law proceedings involving Plaintiff who received an 'office' to perform

24      as a notary, and (B) the rights and responsibilities of  Plaintiff as they pertain to the

25      requirement to accept unilateral rulings involving Plaintiff's performance in a venue

outside the scope of Defendant State of Nevada's Secretary of State, notably the private venue where administrative private settlements are not constrained, controlled, or inhibited.

## B2. FACTS

120.    Plaintiff incorporates by reference paragraphs 1 through 119 as if fully set forth herein.

121.    The First Amendment right to speak freely includes the right to contract at will without government interference and has never been repealed or replaced although Defendants have stripped Plaintiff of a necessary office without probable cause which serves as a bridge between the public and private venues.

122.    The Fourth Amendment right to property and property interference remains free from arbitrary seizure, yet Defendants have plundered Plaintiff's property interest in the office of notary in order to gain unjust enrichment via unnecessary court actions. At no time has Plaintiff been notified that Plaintiff has been deemed officially unworthy of serving as a notary due to suspension, revocation, and/or cancellation.

123.    The due process clause in the Fifth Amendment was clearly circumvented when Defendants colluded with a state actor/attorney, Kania, and his client, RR, to accuse, find guilty, and penalize Plaintiff without any hearing or opportunity to challenge the accusations, which, only if this were the Inquisition might be tolerated.

124.    Defendant state actors forayed into the private venue to impose state statutes upon Plaintiff's performance by penalizing Plaintiff, then sabotaged Plaintiff's ability to assist the People desirous of adhering to the tenet mandating attempts at private settlement by obstructing Plaintiff's ability to obtain the necessary notary stamp

through collecting the fee but not delivering the certificate authorizing the stamp.

Involuntary servitude resulted when SoS expropriated Plaintiff's seal without the

authority to determine Plaintiff's role in the private venue that then excluded the acts

Plaintiff considers crucial to maintaining a checks and balance on rogue state officials.

Defendant SoS usurped Plaintiff's power as well as the right of the People to hold

miscreants in the public accountable.

## B3. PLAINTIFF MOVES THE COURT

For a declaration that:

125.    Plaintiff incorporates by reference paragraphs 1 through 124 as if fully set forth

herein.

126.    Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized

Plaintiff without probable cause.

127.    Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized

Plaintiff based on an unsworn letter of inquiry.

128.    Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized

Plaintiff without collecting confidential commercial information from Plaintiff.

129.    Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized

Plaintiff without utilizing the mandated administrative process.

130.    Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized

Plaintiff without providing Plaintiff an opportunity to cure.

131.    Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized

Plaintiff without providing Plaintiff the opportunity to submit exculpatory evidence.

132.    Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized

Plaintiff without due process.

133.   Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized Plaintiff without providing Plaintiff the opportunity to know or face Plaintiff's accusers.

134.   Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized Plaintiff without distinguishing between the private venue and the public venue.

135.   Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized Plaintiff which deprives Plaintiff and Plaintiff's patrons of the opportunity to obtain the mandated private settlement attempt.

136.   Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized Plaintiff which deprives Plaintiff and Plaintiff's patrons of the opportunity to obtain the mandated private settlement attempt requiring Plaintiff and Plaintiff's patrons (the People choosing private settlement) to utilize state courts to obtain judgments.

137.   Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized Plaintiff which deprives Plaintiff and Plaintiff's patrons of the opportunity to obtain the mandated private settlement attempt, compelling Plaintiff and Plaintiff's patrons (the People) into the public venue against their will.

138.   Nevada Secretary of State unilaterally charged, adjudicated, fined, and penalized Plaintiff which deprives Plaintiff and Plaintiff's patrons of the opportunity to obtain the mandated private settlement attempt, depriving Plaintiff and Plaintiff's patrons (the People) of a remedy outside the scope of government.

139.   The compelled performance in the public venue constitutes involuntary servitude.

140.   The compelled performance to contract with the public courts constitutes government interference with the right to contract freely at will.

141.   The letter submitted to SoS by Russell Ricciardelli (RR) requested and required investigation by SoS to determine if the request was founded on facts.

142.    The letter submitted to SoS by RR was at the behest of a state actor, Attorney Edward D. Kania.

143.    The letter submitted to SoS by RR was at the behest of a state actor, Attorney Edward D. Kania and was for the sole purpose to vex and annoy.

144.    The letter submitted to SoS by RR was at the behest of a state actor, Attorney Edward D. Kania and was in retaliation for Plaintiff's patron obtaining a private judgment against RR and Kania who were involved in a scheme to avoid detection in an action involving sexual harassment and influencing a state court 'judge'.

145.    The letter submitted to SoS by RR was at the behest of a state actor, Attorney Edward D. Kania who had some connection and/or association with Defendants Cegavske and/or Mueller.

146.    Nevada Secretary of State had a duty to collect evidence from all parties to the alleged issue with Plaintiff and submit everything to an administrative law judge.

147.    SoS had a duty to issue the notarial stamp to Plaintiff after accepting and negotiating (cashing) the money order Plaintiff paid for the fee.

148.    SoS had a duty to return the fee if SoS had grounds for not renewing Plaintiff's office.

149.    SoS has not declared Plaintiff's office as suspended, as reflected by the published list posted by the Office of SoS on the State of Nevada Secretary of State website on or about October 1st, 2018.

150.    SoS has not officially declared Plaintiff's office as revoked, as reflected by the published list posted by the Office of SoS on the State of Nevada Secretary of State website on or about October 1st, 2018.

1    151.    SoS has not officially declared Plaintiff's office as cancelled, as reflected by the

2          published list posted by the Office of SoS on the State of Nevada Secretary of State

3          website on or about October 1st, 2018.

4    152.    The retention of Plaintiff's fee without the official suspension, revocation, and/or

5          cancellation of Plaintiff's office constitutes unjust enrichment.

6    153.    Nevada Secretary of State demonstrated a clear bias by unilaterally depriving

7          Plaintiff of the official stamp based on nothing more than a letter of inquiry from a

8          man who holds a grudge against Plaintiff and/or Plantiff's patron.

9    154.    An independent investigation, such as the kind required during the data integrity

10         board cycle process, would have uncovered the retaliatory motive behind the letter RR

11         wrote at the behest of an attorney (Kania) whose suspension from the Nevada Bar is in

12         the hands of the Nevada Supreme Court (case #75624) and USDC case

13         # 2:17cv02178MMD-CWH, wherein Plaintiff's patron exposed criminal activity using

14         the private administrative process to obtain a judgment which estops RR and Kania

15         from arguing in the public venue a position each refused to provide in the private

16         venue regarding sexual harassment based housing discrimination and illegally

17         influencing a court officer.

18

19   **B4  DETRIMENTS AND DAMAGES**

20

21   155.    Plaintiff incorporates by reference paragraphs 1 through 154 as if fully set forth

22         herein.

23   156.    Plaintiff is subjected to a tyrannical decision by Nevada's SoS which differs not

24         from decisions routinely imposed in oppressive countries, dispossessed of a voice to

25         defend against nebulous accusations that Plaintiff performed an act in the private

1    venue which the public venue portends to control, and which cannot be tolerated in a

2    free society.

3    157.    Plaintiff has and continues to suffer the injustice of being charged, tried, and

4    convicted without any phase of the mandated administrative process undertaken,

5    which is tantamount to the baffling and incredulous penalties inflicted without

6    opportunity to cure, which in fact, was available to SoS's office when Ross Miller was

7    presented with the opportunity to correct any potential wrong-doing Plaintiff engaged

8    in since September 25, AD2010, yet never did.

9    158.    The People, the creditors, the assets, the *raison d'etre* of Nevada and the United

10    States have no protection from the repressive 'presumed guilty' practice exhibited by

11    the Nevada SoS if Plaintiff's penalties are permitted to stand.

12    159.    The People never delegated any waiver to the due process clauses of either the

13    Nevada or the United States Constitutions, and the usurpation of both administrative

14    and judicial processes by the SoS Office is detrimental to the freedom from selective

15    prosecution where accountability rests in the hands of the very government office

16    conducting the prosecution against Plaintiff.  Free people must be protected from such

17    commandeering and condescending acts.

18    160.    Plaintiff has been damaged by the stain on Plaintiff's reputation and good-will,

19    which resulted in the smearing of Plaintiff's name.

20    161.    Because SoS has not listed Plaintiff's name as one whose office was suspended,

21    revoked, or cancelled, Plaintiff has no plain, speedy remedy, and SoS must be

22    enjoined either via a writ of prohibition against the unlawful withholding of the office

23    where the fee tendered has been accepted, or via a writ of mandamus compelling the

24    release of the certificate authorizing the office to Plaintiff.

25

162.     The destruction of the trust inherent in a government of the people, by the people, and for the people results in irreparable damage and SoS of Nevada's relentless insistence on enforcing an unsubstantiated allegation which was based on a foray into the private venue is immeasurable.  SoS has created a virtual prison wherein Plaintiff is expected to remain silently convicted of nebulous, unspecified premises, defined for purposes herein as "a proposition from which another is inferred".

163.     SoS's uncompromising stand presumes the private venue of the People are willing to tolerate the SoS's exertion of power over the private venue, an unconscionable assault on the assets of the State which State officials and actors are sworn to protect, not persecute or stultify as if the State were entitled to operate a monopoly without competition, even from foreign venues.

164.     The acts, actions, omissions, and lack of transparency of Nevada's SoS in charging Plaintiff without probable cause on an unsworn letter of inquiry from a 'personal friend', and assessing fines and stripping of an office without justification threatens the sovereignty of the People of Nevada and the United States of America, and that must be construed as treason, for any undermining of the government, the true government, i.e., the People, is tantamount to mixed war and must be curtailed immediately.

165.     Nominal damages for malicious prosecution – which an unnoticed procedure must be deemed as, are appropriately called for herein due to Defendants' presumed knowledge that administrative law judges are established in every agency within the State of Nevada, for where there is no remedy, there can be no law, at least not enforceable law.  Defendants maliciously prosecuted Plaintiff on an unsworn letter of inquiry and then unilaterally, without noticed hearing or collection of confidential

1  commercial information to determine if exculpatory evidence existed, found Plaintiff

2  'guilty/liable' and assessed fines and penalties.

3  166.   Actual injury not only encompasses out-of-pocket expenses, which is reflected in

4  the cost of the renewal course and the fee for the authorization stamp, but includes

5  defamation or falsehood or impairment of reputation, standing in the community

6  and/or personal humiliation and mental anguish and suffering, which the facts show

7  Plaintiff suffered, losing face with patrons who were left hanging when Plaintiff's

8  office was 'suspended', 'revoked' or 'cancelled' without any records reflecting such

9  suspension, revocation, or cancellation.

10  167.   Exemplary damages require a showing of a highly culpable state of mind in

11  Defendants, which Plaintiff demonstrates by establishing that for state actors to by-

12  pass due process even after the opportunity to cure, an extensive grace period, and a

13  notice of dishonor from Plaintiff's notary were presented. Since Defendants are

14  trained government employees with years of experience and well-versed in the data

15  integrity board cycles enmeshed in every state agency, their acts and omissions

16  EQUATES with malice, deserving of consequential damages. There is no excuse, for

17  if Plaintiff is bound by the law, so are these Defendants who might have easily

18  conducted a hearing to hear the true nature of Defendants Ricciardelli and Kania's

19  inquiry.

20  168.   Pursuant to the two theories for damages, general damages without proof of loss

21  are recoverable if Constitutional rights are to remain valuable and there is a strong

22  need to deter further violations; the need to deter to protect the private venue of the

23  People from those who would foray into or coerce/lure People out of the safety of the

24  private venue cannot be overstated. To protect the People from those state actors who

25  would invade or intrude into the private's business IS the business of the judiciary.

1    When the executive branch's acts are called into question, it is the mandate of the

2    honest judiciary to weigh said acts to determine if the acts are in harmony with the

3    intent of the law, and there can never, in a Constitutional Republic, be an intent for the

4    public servants delegated the duty to preserve the private People, to interfere, obstruct,

5    or destroy the integrity of the *raison d'etre*.

6    169.    This particular cause is ripe for Declaratory Judgment because the Court will find

7    that, if a hearing were held, the outcome would not have been the same [reference:

8    *Unified School District #480 v. Eperson, 551 F2d 254 (1977- 10th Circuit]*.  Had

9    Defendants conducted a cursory investigation, no justification for Defendants' acts

10   would have arisen.

11   170.    Causation establishing Defendants' acts as malicious include: (a) use of an

12   unsworn inquiry from a disgruntled party (b) without conducting the mandated

13   independent investigation seeking *confidential commercial information* (cci) (c)

14   submission to a data integrity board head, whether judicial officer or administrative

15   law judge, indicating Defendants chose to assign more weight to the disgruntled third

16   party (RR) and his attorney than Defendants did to the facts or evidence, or lack

17   thereof, before them.  This Court may call for an investigation to determine if undue

18   influence was exerted by RR and/or Kania, who have similar allegations pending in

19   USDC Court action #2:17cv02178 MMD-CWH

20

21   **B5  EXHAUSTION OF REMEDIES**

22

23   171.    Plaintiff incorporates by reference paragraphs 1 through 170 as if fully set forth

24   herein.

25

- 44

172.     On or about November 30, AD2017,  Plaintiff tendered a conditional acceptance

of  Defendant Mueller and Secretary of State's offer  that Plaintiff passively allow the

surreptitious stripping of Plaintiff's office without any official suspension, revocation,

and/or cancellation, and to quietly consent to pay $5200 in fines and, in effect, cease

and desist performing unidentified, prohibited acts, all unilaterally imposed on the

basis of an innocuous inquiry which SoS converted into a complaint and a FINDING

OF GUILT without contacting Plaintiff even once for possible opposing *confidential*

*commercial information* (cci), which, ironically, is the stalwart of the data integrity

board cycle instituted at every branch of government in the State of Nevada, not to

mention the federal agencies.

173.     Plaintiff also sent to the SoS, two sets of FOIA requests under Nevada's Public

Records Act, the first on December 19, AD2017, and the second on October 11,

AD2018, the latter of which has received no response.

174.     Additionally, Plaintiff's notary issued a Notice of Dishonor to Mueller indicating

that she and SoS remained silent to the Conditional Acceptance which, to date,

indicates a deliberate choice to remain silent to the settlement of the crucial issues

raised herein.

175.     As a last resort, whether such a move was required or not, Plaintiff filed a claim

for damages with the SoS to ensure that all remedies had been exhausted.  This

occurred on October 11, AD2018, and there has been no response from SoS or State's

Attorney General, Adam Laxalt, to whom the claim was delivered.

176.     Therefore, Plaintiff is entitled to a declaratory judgment which adjudges Nevada's

SoS as liable for denial of due process, and compelling Plaintiff out of the sanctity of

the private venue into the public venue to prevent Plaintiff from providing a well-

recognized remedy to the People who utilize Plaintiff in her official capacity to obtain

1    private settlements which may then be recognized in the public venue for enforcement

2    purposes, harming not only Plaintiff, but the sovereignty of the American People.

3

4                    **C. THIRD CAUSE OF ACTION – Injunctive Relief**

5

6    177.    Plaintiff incorporates by reference paragraphs 1 through 176 as if fully set forth

7    herein.

8    178.    The four vectors required for injunctive relief are met herein in that: (A) monetary

9    damages cannot compensate for Plaintiff's inability to serve as a bridge between the

10   public and private venues when any of the People seeking to obtain private settlement

11   PRIOR to seeking judicial review request Plaintiff's assistance; (B) the public interest

12   is clearly destroyed when the People are compelled into the public courts using State

13   authorized attorneys who pretend the private settlement was attempted and failed; (C)

14   irreparable harm occurs when public officials invade the private venue of the People

15   for the purpose of controlling activities against the right to contract at will, which

16   achieves unjust enrichment for the State in ways which exceed monetary gain, i.e.,

17   which usurp the power of the People to live within the realm of logic, reasoning, and

18   common sense where no person or property is harmed; and, (D) property rights are

19   confiscated without due process, including but not limited to stealing Plaintiff's

20   notarial office and the pillaging of People's private judgments.

21   179.    Defendants' acts and omissions were under color of law and without authority,

22   leaving Plaintiff without a remedy to file an objection to an administrative law judge's

23   order since no administrative law judge weighed any controversy, mandating a

24   preliminary and permanent injunction, which may be in the nature of a Writ of

25   Prohibition, prohibiting Defendants from continuing to withhold the office Plaintiff

1  paid for with legal tender, time, and training, or a Writ of Mandamus, compelling

2  Defendants to issue the notary office predicated upon payment of the application fees,

3  completion of training, and, the lack of grounds for suspension, revocation, and/or

4  cancellation.

5  180.   Compensatory damages for the cost of the renewal class and the authorization,

6  both received and accepted by Defendants are mandated, as well as costs for the

7  renewed bond and oath of office administered through county recorder of Clark

8  County.

9

10  **D. FOURTH CAUSE OF ACTION - Civil Conspiracy**

11  181.   Plaintiff incorporates by reference paragraphs 1 through 180 as if fully set forth

12  herein.

13  182.   'But for...' the actions of RR sending the letter seeking inquiry into the actions of

14  Plaintiff which resulted in an estoppel against RR in a sexual harassment action, and

15  the advise of Defendant Kania to stir up trouble in the public venue through planting a

16  seed with Kania's comrades at the SoS office in the State of Nevada, this action for

17  declaratory relief would not have arisen.

18  183.   Defendants maliciously conspired to diminish the power of Plaintiff's testimony,

19  which carries the weight of two, by unilaterally converting a letter of belief into a

20  complaint, which Defendants knew or should have known did not constitute probable

21  cause in its unsworn state.

22  184.   Defendants acted in concert to penetrate the private venue of Plaintiff by

23  circumventing the mandated administrative law proceeding at the state level and

24  assessing fines in the amount of $5200 while conspiring to stop Plaintiff from

25  contracting with patrons desirous of obtaining private settlements pursuant to the tenet

1   in *OK Corp v Williams (ibid)* in order to present said judgments to the public for

2   enforcement, with a willing and knowing scienter that Defendants had no authority to

3   interfere with Plaintiff's right to contract in the private venue.

4   185.   The conspirators may not have known one another in full, but as long as the same

5   goal served each defendant, the conspiracy resulted in the proximate cause of

6   Plaintiff's damages. It is clear from the foregoing facts that SoS Defendants benefitted

7   from the cessation of Plaintiff's actions through the redirection of court fees to the

8   public when judgment is sought in the state courts and RR and Kania benefitted by

9   diminishing the private judgment support Plaintiff acquired which would stop RR and

10   Kania from using a court to defend their illegal activities where they could continue to

11   unduly influence judges and/or pervert the public system.  [Reference: USDC case #

12   2:17cv02178MMD-CWH.]

13   186.   Defendants acted with malicious intent to defraud and injure Plaintiff.

14   187.   Defendants knew the collusion to conspire to defraud would injure Plaintiff.

15

16   **E.  FIFTH CAUSE OF ACTION  - Civil Rights/Constitutional Violations**

17   (Regarding Nevada Secretary of State's Predetermination of Plaintiff's Rights, Duties, and

18   Responsibilities as Performed in the Private Venue.)

19

20   188.   Plaintiff incorporates by reference paragraphs 1 through 187 as if fully set forth

21   herein.

22   189.   The Court must view the following in light of one irrefutable fact, that RR sent an

23   unsworn letter of inquiry at the behest of an attorney and SoS's immediate rush to

24   judgment cannot be construed as anything other than denial of due process or there

25   would be abundant evidence that the mandated private administrative process

attempted to collect sufficient confidential commercial information from ALL parties, that an administrative law judge within the department was assigned to weigh that evidence and present a ruling after Plaintiff contributed substantive materials for Plaintiff's position, and, ample proof that Plaintiff had the opportunity to supplement whatever the law judge found lacking, lies as *prima facie* evidence that the outcome had been predetermined in order to quash the power of the People.  In the absence of evidence gathered by Defendant SoS in this matter, the opinion in the *OK Corp* decision does not exclude, restrict, limit, or otherwise prescribe how private settlements must be obtained, or from where valid settlements must be acquired, therefore, SoS of Nevada perpetrated a ruse upon Plaintiff and the People in a self-serving, unjust enrichment scheme so cunning that only a die-hard student of American law would know to stand up to it.

190.     Beyond the self-serving, unjust enrichment benefits to the State, however, rests the imperceptible, preemptive strike against the People's bulwark to hold miscreant state actors accountable.

191.     If an interest protected by a Constitutional right is not directly analogous to an interest protected by common law damages, the common law rule should be tailored to fit the Constitutional right in question.


(1).  Right to Contract at Will – Article I § 10, United States Constitution


192.     Plaintiff's right to contract is inviolate as evidenced by the Constitution for the State of Nevada and the U.S. Constitution.

193.    Obstruction of Plaintiff's right to contract accomplished by a subversive act chills Plaintiff's right to free speech and petitioning for redress, in contradistinction to the First Article in Amendment **which does not address contracts**.

194.    Defendants' actions and omissions, in effect, annul Article 1 § 10 of the U.S. Constitution which prohibits the right of the people to contract, and particularly attempts to negate the bar against government intrusion into the private venue. Plaintiff, during her lifetime, may have willingly and knowingly and/or inadvertently traversed into the public to contract, but unless Plaintiff is 'caught' in the public venue, Defendants cannot force Defendants' laws or statutes upon Plaintiff or the People who patronize Plaintiff for relief from all forms of oppression and injury.

195.    Defendants acted with malice when Defendants willingly and knowingly invaded Plaintiff's contract with a patron, one of the People, which memorialized the dishonor of a party (RR) who refused to settle an action regarding sexual harassment, depriving Plaintiff of the right to contract with any of the People, rather than establishing, via timely and adequate hearing, that this one contract was null and void.

196.    The acts of all Defendants were malicious, performed under color of law, and were the proximate cause of Plaintiff's injuries.  All Defendants took direct adverse actions to deceive Plaintiff under color of law, chilling Plaintiff's right to contract at will and perform a series of observations designed to determine if the dishonor of an attempt at private settlement was intentional and deserving of memorialization by a notary witness whose testimony carries the weight of two.  Defendants RR and Kania perverted the delegated authority of a state office, either through friendship or some form of 'debt', intended to subvert and/or corrupt the laws and statutes of the legislatively enacted statutes that are restricted to the public venue, which actions did

1    not advance the legitimate goals of a claim in the private venue where Defendants lack

2    authority.

3    197.    Exemplary damages strongly advocated in cases such as this, where the behavior

4    of Defendants is malicious, aggravated, and oppressive, and encompasses usurping

5    the power of the People in their private venue to contract for lawful purposes is

6    warranted.

7    198.    Defendants RR and Kania attempted to use the government to extract vengeance

8    against Plaintiff's process which resulted in obtaining a private judgment against RR,

9    and must be deemed as the proximate cause of this entire fiasco, mandating punitive

10    actions to quell future attempts to fix a predetermined outcome within the ranks of

11    public servants, as RR and Kania have a pattern of doing.

12

13        (2).  Right to Speak Freely and Petition for Redress - First Article in Amendment,

14        United States Constitution

15

16    199.    Defendants' confiscation of Plaintiff's notary office on the nebulous grounds that

17    Plaintiff's actions were somehow unlawful in the private venue under the statutes of

18    the State of Nevada has a chilling effect on Plaintiff's right to speak freely outside the

19    scope and purview of the State of Nevada and clearly stultifies Plaintiff's right to

20    assist in obtaining redress against corrupt state actors and/or organizations on behalf of

21    the People.

22    200.    Defendants' acts and omissions were deliberate and Defendants knew or should

23    have known that the willing and knowing withholding of Plaintiff's notary office

24    would unjustly enrich State coffers because People deprived of the remedy in the

25    private venue would have no other choice but to petition a state court against their

will, obliterating the intent of the remedy mandated in the *OK Corp (ibid)* decision. Defendants not only substantially impaired Plaintiff's contractual relationships, but have not, and cannot, demonstrate a significant and legitimate purpose behind the divestiture of Plaintiff's office to assist the People in obtaining private settlements capable of cognition in the public venue. Defendants' inability, failure, and/or refusal to demonstrate that stripping Plaintiff of an office to stultify assisting the People in obtaining a private judgment, was a remedy for a broad or social economic problem, must be construed as deliberate obstruction or gross incompetence.

201.    Defendants may not claim the withholding of Plaintiff's office is reasonable and appropriate for its intended purpose, for the obvious purpose is illegal and/or unlawful, which is how this Court must construe the true, unstated, purpose of Defendants, i.e., to compel the People into using state courts to obtain settlements, which greatly augments the state's coffers while diminishing the People's access to a remedy to which the People are entitled to obtain wherein the state has no piece of the action, ergo, interest in the outcome. Compelling the People to seek remedy in a court, without first attempting private settlement, regardless of which foreign venue the People elect gives the State an interest in the judgment, for that which can be granted can also be taken away. The deprivation is a racketeering scheme of major proportions and differs not from twisting someone's arm to enforce one path to the remedy of 'freedom from harassment.' Defendants' harassment of Plaintiff borders on racketeering and a federally-initiated investigation into how many times Defendant SoS may have perpetrated this ruse and with how many other 'cooperating' third parties, seems the next logical step.

1   202.     Depriving Plaintiff of the opportunity to assist in obtaining a private settlement

2       outside the venue of the State creates forced performance for the benefit of a 'master'

3       in a master/slave relationship, as discussed below.

4

5       (3).  Right to Due Process –5th Article in Amendment, United States Constitution


1  202.    Depriving Plaintiff of the opportunity to assist in obtaining a private settlement outside the venue of the State creates forced performance for the benefit of a 'master' in a master/slave relationship, as discussed below.

### (3).  Right to Due Process –5th Article in Amendment, United States Constitution

203.    SoS held Plaintiff liable without conducting a hearing or mandated administrative law proceeding, without notice to cease and desist, and, without probable cause (an unsworn letter of inquiry from a disgruntled party against whom Plaintiff obtained a private settlement via dishonor), and unilaterally fined Plaintiff $5200 and surreptitiously stripped Plaintiff of the office of notary for performing acts which are protected under Article I § 10 of the United States Constitution.

204.    Defendants knew Plaintiff had a right and a duty to the sovereign People to provide a remedy in the nature of private settlement which is not only mandated (reference: *OK Corp v. Williams*) but which is capable of recognition in the public venue as a foreign judgment, in spite of the competition with Nevada's state courts for such procedures.  Defendants RR and Kania used the authority of Defendant SoS in an attempt to subvert the private settlement which established an estoppel against RR and Kania in federal court case #2:17CV02178MMD-CWH, where Plaintiff's patron intended to use Plaintiff's personal knowledge that a *motion in limine* might apply.  The very fact that Kania advised RR (just as Kania did when RR filed a second unlawful eviction action after receiving an unfavorable decision in the first action, contrary to the Nevada Supreme Court's ruling in *Five Star Capital v Ruby*) indicates the fear of the power of the personal knowledge Plaintiff wields to catch reprobates who abuse the legal system to avoid prosecution (just as Kania did when Kania 'influenced' a co-defendant 'judge' in the USDC action).

205.    Plaintiff's injuries are inherent in the nature of the wrong; this is not a school board, but a Secretary of State who knew or should have known that unjust enrichment was a stone's throw away once Plaintiff (and other notaries) were prevented from serving the duplicate purpose of a state court. Worse, an attack against the assets of the country for unjust enrichment through compelled performance in the public while conducting secret proceedings, desecrates the private remedies available to the People by a Notary who undertakes a process Defendants saw as commercial competition for their state courts. Based on these elements and the fact that Defendant Kania, an attorney granted permission to practice in this State, was the defendant who prompted all that has transpired. The laws can hardly be considered a foreign principle to any Defendants.

206.    The deprivation of due process was willingly and knowingly and maliciously achieved under color of law by state actors whose intent was to unjustly enrich state coffers while undermining the powers and authorities of the private venue.

207.    Plaintiff has sovereign and constitutional rights and privileges as well as significant liberty and property interests of which SoS willingly and knowingly and maliciously deprived Plaintiff by thwarting the opportunity to defend during either an administrative law proceeding through a State mandatory data integrity board hearing or the conditional acceptance procedure initiated by Plaintiff.

208.    The fundamental constitutional questions raised in this Complaint are beyond the self-serving grasp of the Nevada's SoS. The Due Process Clause of the Fifth Amendment to the U.S. Constitution requires that the SoS of Nevada, as an administrative agency, provide Plaintiff with a fair and impartial adjudicatory proceeding - both in appearance and in reality - that is free of any prejudgment on the

key factual and legal merits of the allegations in the concealed administrative 'complaint'.

209.    As more fully alleged above, SoS has violated the State's due process rights to a fair and impartial proceeding by having decided to not conduct an administrative hearing, that as a matter of law, Nevada had jurisdiction over, and that bestowing an office upon Plaintiff somehow granted powers to control Plaintiff's private contracts and duty to secure  private settlements in a venue **outside** the purview of the State of Nevada.

214. As more fully alleged above, the SoS has also violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution by adopting and enforcing inherently biased rules, permitting and condoning persistent and flagrant procedural violations involving converting an unsworn letter of inquiry into a probable cause complaint and prejudging Plaintiff guilty based on the word of a personal 'friend' or 'associate' of the SoS as if immune from accountability which is the proximate cause of  Plaintiff's damages.

210.    Defendants' wrongful abuse of Plaintiff's due process rights and security against involuntary servitude, silencing Plaintiff's efforts to assist the People in obtaining remedy, resulted in curtailing Plaintiffs ability to serve as the bridge between the public and the private, obliterating opportunities to hold miscreant state actors accountable, justifying severe exemplary damages, especially if Defendants' employers condemn Defendants' actions.

211.    Plaintiff is informed and believes and therefore alleges that the tactic of withholding Plaintiff's office even though fees and training were 'accepted' as wholly

sufficient, is a conscious attempt to force Plaintiff to cave in to SoS's jurisdiction and stipulate/succumb to the furtive pressure to 'operate' only in the public venue under State law, as well as pay for the 'privilege' of abandoning patrons in the private venue who, as the People, would be deprived of the remedy the court in *OK Corp* firmly established.  Compelling the People to obtain judgments in a state court desecrates the *OK Corp* court's decision and must be construed as Nevada SoS's invasion of the private venue while making law and becoming a dictatorship without firing a shot.

212.    The widely-established precedent that denial of due process and the delay in trying to compensate for the denial causes irreparable harm has no argument under the reasonable man test, for memories fade and witnesses vanish.  Plaintiff has been irreparably harmed by a State officer or officers who knew or should have known of the administrative law remedy created in every executive branch of that State's government, particularly when perpetrated in collusion with a private citizen acting under the advice of a state actor.

213.    Additionally, the irreparable harm to Plaintiff's patrons whose attempt at private settlement have been left hanging in mid-air cannot be rectified, although this action may ameliorate the inability to ever obtain final judgments through a *nunc pro tunc* retroactive grant in order to assuage arbitrary and capricious acts which abuse the administrative procedures mandated by law.

214.    The acts of all Defendants were malicious, performed under color of law, and were the proximate cause of Plaintiff's injuries.  All Defendants took direct adverse actions to defraud Plaintiff, chilling Plaintiff's right to due process, using deception, and avoidance and perversion of the laws and statutes on the books (enacted into law), which actions did not advance the legitimate goals of a claim authorized by law.

**(4) Illegal SEIZURE OF PROPERTY RIGHTS - Fourth Article in Amendment**

215.     Defendants, acting in collusion with a private citizen advised by a state actor, authorized to perform in the state courts and give advice to the public, took Plaintiff's payment and accepted Plaintiff's training regimen, then seized Plaintiff's interest in the office of Notary by withholding the document enabling Plaintiff to secure the symbolic stamp of the office of notary.

216.     Defendants actions and omissions were willing and knowing and malicious and the proximate cause of Plaintiff's damages as well as the damage to the People now prevented from obtaining judgments in the private venue via the administrative process which Defendants knew or should have known obstructed justice through the deprivation of securing judgments in the private venue in contradistinction to the tenet in *OK Corp v Williams (ibid)*, leading to the desecration of a remedy for the People, notably against errant state actors.

217.     Defendants forayed into the private venue to obstruct Plaintiff's ability to assist the People's right and duty under the *OK Corp* mandate, to secure private settlements then carry said judgments into the public venue for enforcement, which is an act of war against the People for no law may be enacted or enforced in the absence of a remedy and the destruction of the People's remedy to secure private settlements is tantamount to illegal seizure when Plaintiff was divested of the notarial office surreptitiously, since Defendants did not even make a pretense that Plaintiff's office had been suspended, revoked, or cancelled, and continued the pretense after receiving an opportunity to cure, damaging Plaintiff and the People.

218.    Compensatory damages for the cost of the renewal class and the authorization,

both received and accepted by Defendants are mandated, as well as

219.    Presumed general damages are also awardable based on the sneaky way

Defendants 'stole' Plaintiff's office, deprived Plaintiff of the opportunity to contract

with others, and prevented Plaintiff from completing several private administrative

processes left hanging.

220.    Further, seizure of a property interest without notice smacks of grievous

oppression and obstruction of justice, invoking stringent exemplary damages,

particularly since Defendants have never been authorized by their employer to seize

any property right of Plaintiff's without just cause.

221.    Plaintiff's interest is validated because it arises out of assisting fulfillment of the

mandate to first attempt private settlement, especially when expecting States to

conduct unbiased adjudications against their own errant state actors has a low degree

of trustworthiness, is a noble endeavor reflecting an honorable interest in the right.

This comports completely with the protected interest under the common law, entitling

Plaintiff to an award of damages under the presumed compensatory damages

principle.  Interest may include 'feeling of just treatment by the government'.  Interest

includes protecting a person from mistaken or unjustifiable deprivation of life, liberty

and property.  Defendant's denial of due process and compelled involuntary servitude

(1) stripped Plaintiff of the life Plaintiff elected, which is to assist the People obtain

private settlements, a significant life choice,  (2) stole Plaintiff's liberty through

coercion into the public venue or suffer being silenced, and (3) confiscated Plaintiff's

property interest in the notarial office for unjust enrichment via limitation of remedies

to state courts, eliminating remedies for the People seeking private judgments,

mandates exemplary damages.  There can be no question that the degree of mental

1   anguish Plaintiff suffered after being deprived of the life goal which provided a sense

2   of satisfaction and service to her country and fellow-man, constitutes irreparable harm

3   to Plaintiff who has had to leave patrons who need her services, hanging without a

4   remedy.

5   (5) Right to be Free from Involuntary Servitude – 13th Article in Amendment, United

6   States Constitution

7   222.    Defendants' construction of Plaintiff's contracts in the private venue as 'public'

8   compelled Plaintiff to 'operate' in the public venue rather that 'perform' for the People

9   in the private venue, lies as *prima facie* evidence that Defendants willingly and

10   knowingly and maliciously used deceit, trickery, and coercion to blur the lines of

11   demarcation between the 'People' and their 'authorized representatives' who are

12   strictly prohibited from foraying into the private venue to direct the activities there.

13   223.    Defendants knew or should have known that luring Plaintiff out of the security of

14   Plaintiff's venue through assessing fines and penalties which require an appearance in

15   the public venue against Plaintiff's will, constitutes involuntary servitude,

16   notwithstanding the fact that Plaintiff's Conditional Acceptance notified Defendants

17   that such a construction was likely.

18   224.    Defendants' silence to the Conditional Acceptance with offer to cure the coercion

19   to drag Plaintiff out of the security of the private venue through false, weak, and

20   insufficient 'charges' without an opportunity to be heard, would have a high likelihood

21   of inducing Plaintiff into a 'fight' which would induce Plaintiff into an argument that

22   would be the dishonor Defendants require to establish that 'all the rules and laws go

23   out the window when a party is in dishonor,' reflecting the maliciousness of

24   Defendants' actions and omissions.

25

225.   The subtle coercion to induce Plaintiff into a dishonor by use of threat, duress, and the withholding of the office of notary, is the proximate cause of Plaintiff's inability to serve the People, a damage of significant proportions since the People are now deprived of a remedy which is anathema to the purpose of government officials.

226.   Compelling Plaintiff to perform only in the public venue constitutes involuntary servitude when Plaintiff demonstrated for approximately 8 years (including a previous encounter with the former Secretary of State Ross Miller) that Plaintiff's intent was to contract with the People in the private venue as well as with persons in the public arena, in order to satisfy the tenet that 'everyone must attempt private settlement prior to seeking judicial review.'   Defendants acted maliciously by ignoring the opportunity to cure in Plaintiff's Conditional Acceptance and leapt headlong into fines and penalties against Plaintiff in a venue where Defendants lack authority of any kind.

227.   The involuntary servitude limits and restricts Plaintiff's ability to perform as the necessary bridge between the public and private venues if peace between government and the People, ergo, the *raison d'etre,* is to be maintained, for when the peace is disturbed, the result is 'mixed war' against the People whose only remedy to obtain private settlements capable of recognition in the public venue, is Plaintiff's collection of personal knowledge that miscreants intended to perpetrate violations against the People wronged.

228.   An attack on one of the People, Plaintiff, is an attack on all, and when the attacker is a state actor brazen enough to come into the private venue to drag or lure, without a willing and knowing contractual basis, one of the People from the safety of the private venue, 'mixed war' is afoot and serves as a Trojan Horse unless the federal judiciary slams the door on state actors who consider clever ruses to shut down remedies available to the People in the private venue.  The acts of Defendants are more

egregious because Defendants committed the very device Plaintiff tried to ensure the People had access to, i.e., the private settlement process. There are, by way of those People who have not had a remedy for several months, presumed general damages as well as aggravated objective and subjective bad faith awards to which Plaintiff is entitled. The compensatory damages measured by the usurped fees and the cost of the renewal procedures and requirements, pale when compared to the exemplary damages to which Defendants need to be subjected to in order to deter future wide-reaching *ultra vires* actions, for the decision in this matter will reverberate across the nation where other notaries have been charged, tried, convicted, and possibly incarcerated for performing perfectly legitimate acts in the private venue.

229.    Defendants breached a duty to protect the People by foraying into the private venue to constrain a notary public, Plaintiff, from serving as a bridge between the public and private venues, particularly as that service pertains to obtaining private judgments against corrupt state actors, of whom Defendants now join the ranks unless their employer disavows their actions as *ultra vires* and investigates to uncover the connection between Defendants Ricciardelli and Kania and state actors so eager to please those third parties that said state actors circumvent all sense of duty and role as public servants and rushed headlong into penalizing Plaintiff on behalf of RR and Kania.

230.    Intangible Constitutional interest protected by procedural due process rights raises the awarding of exemplary damages for deterrence and vindication to the level of provable compensatory damages. [reference treatise by Harper and Jones] and are accomplished by awarding of presumed general damages.

**PRAYER**

231.     Declaratory relief for an actual controversy that exists regarding establishing that Defendants' policies, practices, and conduct violate Plaintiff's rights under the United States Constitution and the Constitution of the State of Nevada.

232.     Injunctive relief in the form of a permanent injunction against Defendants who have 'accepted' the training and legal tender for the office, yet a real and immediate difference exists between Plaintiff and Defendants regarding Plaintiff's rights and Defendants' duty to renew the office of notary public to Plaintiff and cease withholding the authorization certificate for which Plaintiff paid and successfully completed studies to obtain. Defendants owe a duty once money has been tendered and accepted for the renewal, and Plaintiff has no adequate or speedy remedy to obtain the office which Defendants only have a right to disburse, not to pre-judge or evaluate the applicant.  There are no monetary remedies available to Plaintiff since that would mean state actors could 'buy off' people the state did not want to authorize to perform the duties of a notary, and the issue is of GREAT public interest because (a) there is a mandate for all parties to attempt private settlement prior to seeking judicial review, (b) the remedy is for the People who may be unable to obtain a fair and just settlement against state actors in a state court; and (c) oppression in any form, great or small, is an offense against the People of the entire country.

233.     Defendants must be permanently enjoined and restrained from foraying into the private venue with the intent to direct how private commercial affairs are conducted there, or be deemed as initiating 'mixed war' against the People of the United States. Defendants must be restrained from carrying out the policies, practices, and conduct as alleged herein as violating Plaintiff's rights under the United State Constitution and the Constitution of the State of Nevada.

234.   For compensatory damages in the amount of no less than $2,900.00;

235.   For presumed compensatory damages in the amount of no less than $1 million;

236.   For nominal damages in the amount of $5;

237.   For exemplary damages in an amount of no less than $2 million;

238.   For all such costs and other expenses as the Court may direct.

DATED THIS 30th day of November, AD2018

Respectfully submitted by:

Kelly Innsbruck Alexander, Plaintiff

## VERIFICATION OF DECLARATORY RELIEF COMPLAINT

*Let Right Be Done, Though The Heavens Should Fall*

I, Kelly Innsbruck Alexander, Affiant, in correct public capacity as beneficiary to the Original Jurisdiction, being of majority in age, competent to testify, have read the foregoing and assert that my yes be yes, my no be no, and do state that the truths and facts herein are of firsthand personal knowledge, **true, correct, complete, certain, and not misleading**, so help me God, YHWH.

DATED THIS 30th day of November, AD2018

Kelly Innsbruck Alexander, Plaintiff

State of Nevada,
County of Clark
Signed and Sworn to (or affirmed) before me on
*November 30, 2018* by:

Kelly Innsbruck Alexander
Notary Public

CORREY FERRANTE
Notary Public • State of Nevada
Appointment No. 11-6391-1
My Appt. Expires Dec. 28, 2019

- 63 -