AARON D. FORD
  Attorney General
BRANDEE MOONEYHAN (Bar No. 7451)
  Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
(775) 684-1100 (phone)
(775) 684-1108 (fax)
bmooneyhan@ag.nv.gov

*Attorneys for Nevada Secretary of State*
*Barbara G. Cegavske and Lenora Mueller*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KELLY INNSBRUCK ALEXANDER,<br><br>    Plaintiff,<br><br>vs.<br><br>NEVADA SECRETARY OF STATE BARBARA G. CEGAVSKE, LENORA MUELLER, RUSSELL RICCIARDELLI, EDWARD D. KANIA, AND DOES 1-50,<br><br>    Defendants. | Case No. 2:18-cv-02289-RFB-NJK<br><br>**DEFENDANTS NEVADA SECRETARY OF STATE BARBARA G. CEGAVSKE AND LENORA MUELLER'S MOTION TO DISMISS** |

Defendants Nevada Secretary of State Barbara G. Cegavske and Lenora Mueller (State defendants), through counsel, Aaron D. Ford, Attorney General, and Brandee Mooneyhan, Deputy Attorney General, move to dismiss the complaint in this matter pursuant to Fed. R. Civ. P. 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. INTRODUCTION**

Plaintiff Kelly Innsbruck Alexander seeks relief related to her status as a notary public in the State of Nevada.[1] ECF No. 1. While not entirely clear, Alexander's claims

---

[1] State defendants previously filed a Motion to Stay Proceedings because administrative proceedings involving Alexander's notary appointment were pending, and it therefore appeared premature to proceed in the instant matter at that time. ECF No. 8. As represented in that motion, an administrative hearing on the status of Alexander's

center on her apparent belief that there is a "public venue," which includes this Court and the American legal system, and in which Alexander appears to concede that she is subject to regulation under Nevada law. According to Alexander, the "public venue" is legally distinguishable from the separate "private venue," which apparently consists of a legal system independent of the United States and Nevada governments. While the particulars are not clear, the "private venue" appears to include a system of accusing persons of "dishonors," whereby they are deemed guilty of or liable for alleged misconduct if they do not deny the alleged misconduct within a period of time set by Alexander. *See, e.g.*, ECF No. 1 at 18, ll. 8-18 (describing the apparent operation of "dishonors" in Alexander's view, and asserting that a notary's testimony "carries the weight of two witnesses" and is thus "irrefutable," as well as that the State defendants cannot "exert authority" in such proceedings; also concluding that a notary's testimony of a party's dishonor "constitutes a 'judgment'"); *id.* at 23, ll. 16-17 ("Parties who receive a notarial-issued Notice of Protest and fail or refuse to cure their dishonor, are stopped from stating a claim in a public proceeding . . . ."). Such a system, of course, is not recognized by this Court or the judicial system in which it operates. *See Santiago v. Century 21/PHH Mortgage*, No. 1:12-CV-02792-KOB, 2013 WL 1281776, at *1 n.3 (N.D. Ala. Mar. 27, 2013) ("The Court recognizes the use of 'affidavits' and other pseudo-legal documents that purport to require responses within a specified time or face 'legal consequences' of the author's own making. Such tactics do not create valid legal documents."). As Alexander's claims all depend on her being

---

notary appointment was held on January 9, 2019. Despite being served with notice of it, Alexander did not participate in the hearing. *See* NAC 240.470(1). The Hearing Officer issued Findings of Fact, Conclusions of Law and a Final Decision on February 5, 2019, which assessed civil penalties against Alexander, but denied revocation of Alexander's appointment. Alexander has filed a "Notice of Void Judgment," purporting to declare the Hearing Officer's decision void. Alexander has not paid the penalties, which according to the Hearing Officer's decision would allow her to apply for a new appointment, nor otherwise amended her complaint in this matter to address these changed circumstances. As the underlying administrative proceedings appear to be complete, State defendants respectfully submit that a stay is no longer necessary and this Court may consider the instant motion.

deprived of nonexistent power in a nonexistent "private venue" outside the recognized rule of law, she presents no viable legal theory and her complaint must be dismissed.

Additionally, even if Alexander set forth cognizable claims, to the extent that she asserts a claim for damages against the State of Nevada or the State defendants in their official capacities, such claims are barred by the Eleventh Amendment to the United States Constitution and must be dismissed.

## II. STANDARD OF REVIEW

While this Court must "liberally construe the 'inartful pleading' of pro se litigants," *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), "[p]rolix, confusing complaints" should be dismissed because they "impose unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

A motion to dismiss for failure to state a claim must be granted when the plaintiff fails to plead a cognizable legal theory, or fails to plead sufficient facts to support such a legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). While allegations of material fact in a complaint must be taken as true and construed in the light most favorable to the plaintiff, *see Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).

## III. ARGUMENT

The complaint in this matter is rambling, repetitive, and in many respects, unintelligible. While a pro se party's pleadings must be given liberal construction, *see Eldridge*, 832 F.2d at 1137, to the extent the complaint's assertions cannot be discerned, they fail to comport with the requirement of Fed. R. Civ. P. 8(a)(2) that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

And to the extent they can be discerned, they are not simply inartfully pleaded, but substantively non-cognizable. Therefore, the complaint must be dismissed.

The complaint asserts five causes of action, the first four of which are not independent causes of action: two requests for declaratory relief, one for injunctive relief, and one for civil conspiracy. Declaratory and injunctive relief are remedies, rather than independent causes of action. *See, e.g., HSBC Bank USA v. Williston Investment Group, LLC*, No. 2:17-CV-331JCM(CWH), 2018 WL 2110599, at *3 (D. Nev. May 7, 2018); *Ozawa v. Bank of N.Y. Mellon*, No. 2:12-CV-494JCM(RJJ), 2012 WL 3656520, at *3 (D. Nev. Aug. 24, 2012). Likewise, a claim for civil conspiracy only lies where an underlying civil wrong that resulted in damages was committed. *Vested Housing Group, LLC v. Principal Real Estate Investors, LLC*, 648 Fed.Appx. 646, 649 (9th Cir. 2016). Thus, the analysis of the viability of Alexander's claims must begin with whether the claim underlying all the others—the fifth—is cognizable. Because the theory underlying it rests on an outlandish theory that has no support in federal or state law, the complaint must be dismissed in its entirety.

### A. Alexander's Only Independent Cause of Action Is Not Cognizable and the Complaint Must Therefore Be Dismissed

Alexander's fifth cause of action is centered on her assertions of the effect the Secretary of State's actions had on her alleged authority in the nonexistent "private venue." ECF No. 1 at 48, ll. 16-18. This cause of action is separated into five sub-claims, all of which are dependent upon Alexander's false assertion that the Secretary of State has no authority over the use of a notary appointment in the nonexistent "private venue." Alexander does not allege that the Secretary of State exercised any authority over Alexander's pseudo-judicial actions aside from Alexander's improper use of her notary stamp. And since there are lawful restrictions upon the use a notary stamp, *see* NRS 240.065; NRS 240.075, the Secretary of State was well within her discretion to discipline Alexander for violating those restrictions, *see* NRS 240.010.

///

### 1. Article I, § 10 (Right to Contract)

Alexander alleges injuries that arise from the Secretary of State interfering with her contracts in the "private venue," namely, "perform[ing] a series of observations designed to determine if the dishonor of an attempt at private settlement was intentional and deserving of memorialization by a notary witness whose testimony carries the weight of two." ECF No. 1 at 50, ll. 19-21. Alexander believes there is a "private" legal system in which a notary—who, of course, becomes a notary by invoking the provisions of what Alexander would deem the "public venue"—accuses a person of a "dishonor," acts as a witness whose testimony cannot be challenged, and makes a determination of that person's guilt of the dishonor. However, Nevada notaries are not authorized to act as factfinders or conduct judicial-like proceedings with binding effect on the participants. *See* NRS 240.004 (setting forth the notarial acts that notarial officers in Nevada are authorized to perform: taking acknowledgements, administering an oath or affirmation, certifying a copy, executing a jurat, noting a protest of a negotiable instrument, or performing other duties prescribed by statute). While the Contracts Clause, U.S. Const., art. I, § 10, cl. 1, limits the power of states to regulate contracts between private parties, the extralegal activity here—purporting to make contracts to use the notary appointment granted by the State of Nevada to act as a pseudo-judge—is not the type protected by the Contract Clause. *See Hudson County Water Co. v. McCarter*, 209 U.S. 349, 357 (1908) ("One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them.").

### 2. First Amendment

Alexander's sub-claim asserting impairment of her First Amendment rights rests on the same incorrect assertion that a notary has powers beyond those actually provided by law. Specifically, Alexander asserts that her rights under the First Amendment were impaired because the questionable status of her notary appointment while a complaint against her was investigated interfered with her "assisting the People in obtaining a private judgment," and the State's purpose in doing so was to "compel the People into using

state courts to obtain settlements, which greatly augments the state's coffers while diminishing the People's access to a remedy to which the People are entitled to obtain wherein the state has no piece of the action, ergo, interest in the outcome." ECF No. 1 at 52, ll. 6-7, ll. 12-15. In addition to failing to explain how any such activity violated her rights under the First Amendment, Alexander has not and cannot show that a notary has such authority, and thus fails to present a viable claim for relief in this regard.

### 3. Fifth Amendment

As the Fifth Amendment does not apply to the states, *see Capital City Dairy Co. v. Ohio*, 183 U.S. 238 (1902), the Fifth Amendment does not govern the State defendants' actions, and Alexander's claim premised on the Fifth Amendment fails a as a matter of law. And again, Alexander's arguments are premised on her incorrect belief that notaries serve as a "duplicate purpose of a state court," with which interference by state officials evinces the intent to "unjustly enrich state coffers while undermining the powers and authorities of the private venue." ECF No. 1 at 54, l. 4, ll. 13-14. Alexander disputes that availing herself of the notary appointment process subjects her to regulation of her notary activity, taking issue with the notion that "bestowing an office upon Plaintiff somehow granted powers to control Plaintiff's private contracts and duty to secure private settlements in a venue outside the purview of the State of Nevada." *Id.* at 55, ll. 6-8. However, one who wishes to become a notary in Nevada subjects herself to the laws governing notaries in Nevada, *see* NRS Chapter 240, NAC Chapter 240, and oversight by the Nevada Secretary of State. *See* NRS 240.150(4) (providing actions that may be taken by the Secretary of State "for any willful violation or neglect of duty or other violation" of NRS Chapter 240). Alexander's bald assertions to the contrary are not supported by any cognizable authority.

### 4. Fourth Amendment

Alexander appears to argue that the Secretary of State's refusal to renew her notary appointment while an investigation was pending against her, *see* NRS 240.010(2)(d) (prohibiting the Secretary of State from appointing as a notary a person against whom a complaint alleging violation of NRS Chapter 240 is pending), had the result of depriving

her of the "property interest in the notarial office," *id.* at 58, ll. 22-23, and was accomplished by "foray[ing] into the private venue [in order] to obstruct Plaintiff's ability to assist the People . . . to secure private settlements." *Id.* at 57, ll. 16-17. Alexander claims she has been damaged by being unable to assist those seeking her services in the "private venue," and "had to leave patrons who needed her services, hanging without a remedy." *Id.* at 59, ll. 1-4. To the extent Alexander's assertions are focused on alleged deprivations to others, i.e., her "patrons" seeking her services as a pseudo-judge in the "private" venue, she is not properly positioned to pursue such relief. *See Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."). Further, as she has no right to provide such "private" remedies, neither does she present a cognizable claim on her own behalf.

### 5. Thirteenth Amendment

Finally, Alexander asserts that she has been subjected to involuntary servitude because defendants' actions "require[d] an appearance in the public venue against [her] will," and such "involuntary servitude limits and restricts [her] ability to perform as the necessary bridge between the public and private venues if peace between government and the People." ECF No. 1 at 59, ll. 14-15; at 60, ll. 13-15. The Thirteenth Amendment provides: "Neither slavery not involuntary servitude . . . shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII. It "prohibit[s] 'peonage—a condition in which the victim is coerced by threat of legal sanction to work off a debt to a master.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1070 (9th Cir. 2004) (quoting *United States v. Kozminski*, 487 U.S. 931, 943 (1988)). Alexander has alleged no facts that can be construed as subjecting her to involuntary servitude.

Alexander's proffered legal theories are clearly lacking in merit. The notion that there is a separate, extralegal system of law that depends on notaries—appointed within the recognized state legal system—to resolve conflicts in an extralegal manner (with allegedly binding consequences in the "public" legal system), is simply nonsensical and finds no support in federal or state law. Alexander's continuous citation of the case of

*OKC Corp. v. Williams*, 461 F. Supp. 540 (N.D. Tex. 1978), does not provide such support. *OKC Corp.* dealt with the Securities and Exchange Commission's use and disclosure of an internal company report in its own regulatory investigation. *Id.* While *OKC Corp.* includes a general statement regarding the exhaustion of prescribed administrative remedies before seeking judicial review, *id.* at 546, and a brief discussion of how the Fourth Amendment protects against unreasonable searches and seizures by the government, but not from private citizens, *id.* at 551, there is absolutely no discussion of a "private venue" outside the scope of the legal system. Nor does *OKC Corp.* contain the proposition for which Alexander cites it, i.e., that it "mandates all parties to attempt private settlement prior to seeking judicial review," ECF No. 1 at 3, ll. 9-11, a proposition which Alexander stretches to support her notion of two separate "venues" of proceedings.

Because Alexander's only independent claim is not cognizable, the other four that depend on it—and which duplicate the arguments within it and are similarly based on the unsupportable notion of a "private" venue in which notaries exercise powers unrecognized under state or federal law—also fail as a matter of law. Accordingly, the entire complaint must be dismissed.

### B. The Eleventh Amendment Immunizes the State Defendants From Liability for Monetary Damages

"The Eleventh Amendment generally bars the federal courts from entertaining suits brought by a private party against a state or its instrumentality in the absence of state consent." *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (1992). Although a state may consent to be sued in federal court by waiving the sovereign immunity conferred by the Eleventh Amendment, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997), the State of Nevada has not waived that immunity, NRS 41.031(3). Additionally, a state official acting in her official capacity is not a "person" as that term appears in 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Cuzze v. University and Community College System of Nevada*, 123 Nev. 598, 605, 172 P.3d 131, 136 (2007).

Accordingly, there is no legal basis upon which Alexander may sue the State defendants in their official capacities for damages in this court.

### IV.   CONCLUSION

For the foregoing reasons, Alexander's complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: March 20, 2019.

                        AARON D. FORD
                        Attorney General

                        By: /s/ Brandee Mooneyhan
                            Brandee Mooneyhan (Bar No. 7451)
                            Deputy Attorney General

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 20th day of March 2019, I caused to be deposited for mailing a true and correct copy of the foregoing **DEFENDANTS NEVADA SECRETARY OF STATE BARBARA G. CEGAVSKE AND LENORA MUELLER'S MOTION TO DISMISS** to the following:

Kelly Innsbruck Alexander
5130 South Fort Apache Road #215-262
Las Vegas, NV 89148

                                                     /s/ Sally A. Bullard
                                                     Sally A. Bullard, LS II
                                                     An employee of the
                                                     Office of the Attorney General